No. 6546.

ROBERT WORRELL vs. JAMES H. VICKERS.

*Prima facie*, the sale, or *dation en paiement* of property, made by a debtor to his creditor, to pay a debt much smaller in amount than the value of the property transferred, at a time when the property is in imminent danger of being seized by the sheriff in favor of a lessor, is fraudulent; and the burden of proof is on the party claiming under such sale, or *dation*, to prove its *bona fide* character.

Under the allegation of fraud, or simulation, touching a transfer of property, every surrounding circumstance bearing on the transfer is admissible in evidence, and will be considered in passing on the character of the assignment.

The lessor's right of pledge can not be impaired by a sale of the property subject to that pledge, collusively made by the lessee to one of his creditors, and removed from the leased premises with the fraudulent intent of defeating the lessor's privilege.

A PPEAL from the Thirteenth Judicial District Court, parish of Tensas. *Hough*, J.   Trial by jury.

*Garrett & Young* and *Labatt, Aroni & Clinton* for plaintiff and appellant.

*Farrar & Reeves* and *E. H. Farrar* for third opponent.

The opinion of the court was delivered by

MANNING, C. J.   The plaintiff sues upon three notes, executed for the lease of the "Thistle Ridge" plantation for 1875, and obtained a writ of provisional seizure, under which twenty bales of cotton were seized. No appearance is made by the defendant. Robert Murdock intervenes, claiming eighteen of the bales under a sale from R. W. McBride. There was judgment, in accordance with a verdict of a jury, in favor of plaintiff against defendant for the sum demanded, being the amount of the notes with interest, subject to admitted credits, with a recognition of his privilege and right of pledge as lessor upon the property provisionally seized, reserving the rights of the Intervenor, and a judgment in favor of the Intervenor for the eighteen bales.

When the sheriff approached the house on the Thistle Ridge Plantation, with writ in hand, he met a wagon laden with cotton, and turned it back. The driver of the wagon says he was still on the Thistle Ridge place when the sheriff stopped him. The officer proceeded to the spot where the other bales were, and there found another Murdock, who announced himself to be the agent of the Intervenor. In a few minutes the loaded wagon arrived. It was now after sundown. Murdock asked the driver why he had come back, and the sheriff answered, by his order. The sheriff announced his purpose to seize all the cotton, mules, and implements. Murdock exhibited a bill of sale from McBride to the Intervenor of cotton, mules, and all movables on the place. The officer, a colored deputy, persisted in his purpose to seize. Murdock

told him it was not legal to make a seizure after sundown.  Nothing was done.

The sheriff remained on the plantation during the night.  The next morning the place was bare.  The cotton and mules and wagons had disappeared.  McBride naïvely says, the mules were kept out of the way.  Eighteen bales of cotton were found by the sheriff on the adjoining land.  The drivers testify that they hauled these bales from Thistle Ridge on that night, and that the cotton was raised on that place.  It was the same that the sheriff found there. · The hauling was by direction of the Murdock who was acting as agent of the Intervenor.  According to his theory, the sheriff could seize only in the sunlight, but it was lawful to remove the objects of seizure even during the darkness of night.

The Intervenor claims these eighteen bales, under a sale from McBride of same day that plaintiff's petition was filed.  McBride says he gave Murdock a bill of sale. ·None has been produced.  The defendant Vickers is the son-in-law of McBride, and the latter says that he worked the plantation with his son-in-law, furnished the team and implements, and was jointly interested in the lease.  He was indebted to Murdock about twenty-five hundred dollars he thinks.  The consideration of the sale was the payment of this indebtedness.  Both of them admit that the property thus sold was worth twenty-seven hundred and eighty-two 56-100 dollars.  Murdock testifies that McBride owed him only seventeen hundred and fifteen 94-100 dollars.  No money was paid at this sale, or afterwards.  McBride thus sold to his creditor, in payment of his debt, property worth a thousand dollars more than the amount of the debt.   Along with the statistics we have the information from McBride himself, that "this sale was *bona fide*, and not made with the intent to defraud any body."

There can be no doubt in our minds of the intent and object of these parties.  The plaintiff in answering the petition of intervention expressly charges collusion between the intervenor and McBride for the purpose of depriving him of his recourse against the crop produced on Thistle Ridge, and the property used in and for its production.  A sale, or a *dation en paiement*, by a debtor to a creditor of property of value largely in excess of the debt due from the one to the other, made under an impending seizure by another creditor of same property, lacks the element of *bona fides* on its face.  Without explanation, the reality of such sale, or giving in payment, is not credible, and under the charge of fraud or  simulation, all the facts and surrounding circumstances attending the transaction are properly inquired into.  Montgomery v. Chaney 13 Annual 207.  When these circumstances confirm the impression created by the suspicious garb in which the transaction is clothed, it is stripped of its pretensions to good faith or reality.

The plaintiff had a right of pledge upon the crop, and the movables. used in producing it, to satisfy his claim as lessor, and he had fifteen days after their removal from the leased premises in which to pursue them. Code of Practice art. 288. The rights of the lessor can not be affected by a sale made by a lessee to one of his creditors, and a fraudulent removal of the property from the leased premises by an agent of the purchaser for the purpose of placing it beyond the landlord's reach. Denistown v. Malard, 2 Annual 14. Civil Code, arts. 3185, 3230, new numbers 3218, 3263.

It follows that the cotton seized provisionally by plaintiff is subject to his claim for rent, and his right can be exercised to the exclusion of the Intervenor, who has no valid claim to it until the plaintiff's judgment is satisfied.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court in favor of the plaintiff against the defendant for the amount of his demand and interest, and recognizing the plaintiff's privilege and right of pledge as lessor upon the property provisionally seized, be affirmed, and that the judgment of the lower court in favor of Intervenor against plaintiff and defendant is avoided and reversed. It is further ordered, adjudged, and decreed that the provisional seizure of plaintiff is maintained, and that he have judgment against the defendant for the costs of the lower court on the principal demand, and against the Intervenor for the costs of the intervention in that court, and all costs of this court.

### ON APPLICATION FOR REHEARING.

A rehearing of this cause is granted for the sole purpose of ascertaining whether the payment of $500, imputed by the plaintiff with the consent of the defendant to the discharge of another debt than the rent, should not be held legally imputed to the rent, and to this point the attention of the litigants is directed.

### ON REHEARING.

DeBLANC, J. The Thistle Ridge plantation was—in 1874—the joint property of plaintiff and defendant. Plaintiff's undivided half of said plantation was leased by defendant for the year 1875. The price of said lease was $1177.75, the last instalment of which was due on the first of October 1875. Not a cent of that price was paid at its maturity— and, to satisfy it, twenty bales of cotton raised on the aforesaid plantation, during the term of the lease, were provisionally seized on the eleventh of June 1876.

The order under which that seizure was made, issued on the ninth of June 1876, and Robert Murdock, who intervened in the suit between

plaintiff and defendant, claims that, on the day of the issuance of that order, he purchased from R. W. McBride, eighteen out of the twenty bales of cotton raised on the Thistle Ridge plantation and seized to satisfy the lessor's privilege. The place, or the half of said place—though rented by Vickers—was rented for the joint benefit of Vickers and McBride, but—according to the latter's declaration—without the consent of Worrell.

It was from plaintiff that defendant acquired title to one half of the Thistle Ridge plantation. What he may have paid and promised to pay . for that half is nowhere mentioned, but it is in evidence that the portion so acquired by Vickers, was by him retroceded to Worrell—and that, in consideration of said retrocession, Worrell returned to Vickers the note he had subscribed for the price agreed upon, and Vickers gave him a a draft of $ 500.00

This transaction took place on the fifteenth of January 1876, and—at that date, Vickers was already indebted to plaintiff for the whole of the rent of 1875......................... $1177.75

In all, not including the stipulated interest on the rental

notes................................................ $1677.75

At that date—the fifteenth of January 1876—what was due from McBride to Murdock? The transcript contains no detailed account of that indebtedness, but the creditor testified that—during the year 1875, he had furnished supplies to the debtor, to the amount of.................................... $1715.94

during 1876............................................. 187.60

forming a total of........................................ $1903.54

and McBride—the debtor—declared that Murdock had furnished supplies to make the crop of 1875, that his bill for the supplies of that year, amounted to some $500 or $1000, and that—on the ninth of June 1876, the date of his sale to Murdock, he was owing him about $2500, and may be more.

When—in a court of justice—a right alleged by one is denied by another, it is not sufficient to establish that it is probable—but it must be established that it is legally certain that the right does exist: otherwise, the claimant must fail. Under the evidence adduced to sustain the intervention, how can we determine what McBride owed or owes to Murdock, and, of that debt, what portion was due in 1874 and which in 1875 ? McBride and Murdock do not agree as to either the amount or the dates of that claim : the first said : a portion of my indebtedness to Murdock accrued prior to January 1875 : the other, that it accrued in 1875 and 1876 ; that—in 1874—McBride had, on his books, a credit of $40.

Murdock's intervention is based on a sale from McBride to him, and—though he has the evidence of that sale, he did not place it before the Court; he did not prove that the price fixed by the vendor and accepted by him corresponds to the value of the property he alleges that he acquired, nor did he prove how and when the acknowledged balance due by him on the acknowledged price was to be paid. Unexplained as it is, does not that omission, coupled with a delivery made on the eve of a delayed seizure, and the nightly exportation of the purchased effects, cast upon that transfer an authorized suspicion? It certainly does.

If Murdock did furnish the supplies—if they had not been paid for in full or in part, his lien was not recorded—and, if it did exist, Worrell was—in no way—informed of its existence, and received in good faith, and in satisfaction of a real indebtedness, every pound of cotton shipped, and every cent paid to him. As to McBride, he knew, and it is difficult to realize that—as his vendor, Murdock was not informed that every article of property embraced in the proposition which preceded the sale, and included in the sale which followed the proposition—mules, oxen, cotton in bales and cotton in seed, was subject to the undenied claim and undenied privilege of Worrell, as a lessor. McBride did not remember whether he told Murdock that said property was about to be seized.

Of what can Murdock complain? How is he aggrieved by the decree of this Court? His account against McBride is not in the record : the sale on which he relies was alluded to by the witnesses, but it was not read to the jury: we know—from their declaration—that it was made for $2782.56, but how was that price paid or to be paid, how settled or to be settled? If McBride's account was received in exchange of a part of that price, where is the receipt? What is to become of the balance fixed by and between those parties? Is it to be retained by the vendee, or returned to the vendor?

Deducting from the price of the sale...................... $2782.56
    the price which he stated was fixed for the cotton pro-
    visionally seized.....................................   997.50

    Our decree leaves in the hands of a creditor who has
    not established his claim, in the hands of a vendee who
    has failed to establish the legality of his title, a bal-
    ance of property which he valued himself at......... $1785.06
What property was so left? Eleven mules which McBride
    said he sold for...................................... $1435.00
And other property for.................................   350.06
                                              $1785.06

The imputation, by Vickers and to his own debt, of proceeds of cot-

Worrell vs. Vickers.

ton which belonged to the planting partnership which existed between him and McBride, was certainly illegal, both as to McBride and as to any creditor of said partnership—but, though it may be that Murdock had a claim against it, that fact was not judicially shown, and it is shown that—not including the cotton provisionally seized—Murdock did receive, in satisfaction of his alleged claim, property which he valued himself at $1785.06.

Under these circumstances, it is no concern of Murdock whether the cotton seized was partly acquired from the laborers, and in what way funds which belonged to Vickers and McBride were disposed of and imputed by Vickers.

We adhere to the original decree rendered in this case.