## DENNISTOUN et al. *v.* MALARD et al.

The privilege of the lessor is superior to that of the vendor, where the property sold has been delivered to the purchaser. Nor can the rights of the former be affected by a sale made by the lessee to one of his creditors, and a fraudulent removal of the property, by an agent of the purchaser, from the premises leased, for the purpose of placing it beyond the landlord's reach. C. C. 1965, 1972, 1977, 3185, 3230.

APPEAL from the Commercial Court of New Orleans, *Watts,* J.

*H. H. Strawbridge,* for plaintiffs and intervenors. 1st. It was a giving in payment, not a sale, and there was no real delivery. C. C. 2628, 2626.

2d. It was made when the seller, or rather the transferror, was insolvent. C. C, 1965, 1972.

3d. Such transfers, within a year preceeding insolvency, are presumptive of fraud in both vendor and vendee, who must prove their good faith. Acts of 1840, p. 133, ss. 14, 19. *Hodge* v. *Morgan,* 2 Mart. N. S. 61.

4th. *Malard's* continuing in possessson was proof presumptive of fraud. C. C. 1915, 2456. 5 Toul., no. 41. *Pierce* v. *Curtis,* 6 Mart. 418. *Thibodeaux* v. *Thompson,* 17 La. 359.

The vendor's privilege yields to the lessor's, All the goods had been unpacked, and were not claimed within eight days thereafter. Civil Code, arts. 3196 3197, 3230.

*Durel* for appellant. By art. 1977 of the Civil Code, "If the parties with whom the debtor contracted, *be, in fraud as well as the debtor,* he shall not, in the annulling the contract, be entitled to restitution of the price or consideration he may have paid, except so much as he shall prove shall have inured to the benefit of the creditors by adding to the amount of property applicable to the payment of their debts; *but if the only consideration be a sum due from such debtor to the party with whom he contracted, then the only restitution to be made is the placing the parties in the situation in which they were before the contract complained of was made.*

By art. 1978, it is declared: "*But if such fraud consisted merely in the endeavor to obtain a preference over other creditors, for the securing or payment of a just debt,* under circumstances in which, by law, the endeavor to obtain such preference is declared to be a constructive fraud, in such case the party shall only lose the advantage endeavored to be secured by such contract, and shall be re-imbursed what he may have given or paid, without interest, and shall restore all advantages he has received from the transaction."

It is under these articles the plaintiff proceeds.

If *Hunt & Co.* are, in the language of art. 1978, "only to lose the advantage endeavored to be secured by the contract" of sale; and if, in the language of art. 1977, "the only restitution to be made, is placing the parties in the situation in which they were before the contract complained of was made," then *Hunt & Co.* stand, as creditors of *Malard,* with the vendor's privilege upon all his goods, and upon all goods transferred by the act of sale of the 14th January, excepting a small quantity, which, being unsaleable, were sent to auction, and brought $124 14.

Plaintiffs' privileges as lessors upon the goods was lost by them, as they did not, in accordance with art. 2679 of the Civile Code, *seize* the objects subject to it, before they were taken from the store, nor within fifteen days thereafter.

The judgment of the court below was based upon art. 1972 of the Civil Code. By that art. it is declared that, " The judgment in this action, if maintained shall be that the contract be avoided as to its effect upon the complaining creditors, and that all the property in money, taken from the original debtor's estate by virtue thereof, or the value of such property to the amount of the debt, be applied to the payment of the plaintiffs." In this case, the effects of the sale were not injurious to the complaining creditors, for *Hunt & Co.* obtained thereby only the advantage which the vendor's privilege gave them, and would still give them, though the sale be anulled. That article must, moreover, be construed in connection with arts. 1973, 1974, 1976, 1977, and 1978. Art. 1973 says, "No contract shall be avoided by this action but such as are made in fraud of creditors, and such as, if carried into execution, would have the effect of defrauding them. If *Hunt & Co.* have the vendor's privilege upon the goods, and no other creditor has a superior or equal privilege, by carrying the contract into execution, *Hunt & Co.* gained no more than their privilege gave them, and its execution could defraud no one.

As to *Brewster*, it would seem impossible to sustain the judgment of the court below, if the articles 1973, 1974, 1976, 1977, and 1978, are regarded as at all applicable to the facts of the suit.

*Greiner*, on the same side.

The judgment of the court was pronounced by

SLIDELL, J. The plaintiffs leased to *Malard* a shop in the city, and while he was in possession, on the 14th day of January, 1843, being in insolvent circumstances, he executed to *John Hunt & Co.*, who were his creditors, and represented by an agent at New Orleans, a notarial bill of sale of all his stock in trade, then on the leased premises. The items forming the consideration of the sale were all antecedent debts. *Malard*, however, remained in possession of the store for several weeks. The understanding between him and *Hunt & Co.* seems to have been, that he should continue the business and account to *Hunt & Co.* for the proceeds of the sales, after applying small sums first for his family expenses and his small debts. *Malard's* sign was continued on the outside of the shop; but a sign was put up inside representing *Malard* as the agent of *Hunt & Co.* Subsequently, and about the middle of February, *Malard* ceased to act in the store, some dissatisfaction arising between him and *Hunt & Co.* who put there an agent appointed by themselves, *Malard's* sign still remaining and his clerks continuing to act there. A few days before the institution of this suit, between sunrise and breakfast time, *Hunt & Co.* carried off all the stock of goods; and then the plaintiffs, who had never had any notice of the transfer to *Hunt & Co.*, though *Hunt & Co.* appear to have known that the rent was unpaid, obtained a sequestration; but the shop was found empty, and the goods could not be traced. Soon after, upon discovering the notarial sale, the plaintiffs, by a supplemental petition, made *Hunt & Co.* parties, charging the invalidity of the assignment as a fraudulent preference, and also charging a fraudulent combination between *Malard* and *Hunt & Co.* to deprive them of the landlord's lien. *Brewster*, another creditor for a small amount for goods sold, intervened, and joined with the plaintiffs in their suit to set aside the assignment. The court gave judgment in favor of the plaintiffs and intervenor; and the defendants, *Hunt & Co.*, have appealed.

We entirely agree with the judge of the court below in the conclusions to which he came, both that the assignment was a fraudulent preference by an insolvent debtor, and that there was besides a breach of good faith towards the

DENNISTOUN
*v.*
MALARD.

DENNISTOUN *v.* MALARD.

landlord, and a violation of his rights in the removal of the goods. We consider the court below as justified in the opinion, that the agent of *Hunt & Co.* was aware that the lessors had not been paid, and that the object of the removal was to defeat their lien. It is said that the lien was gone, because it was not exercised within the fifteen days by a levy on the property, and that the alleged lien of *Hunt & Co.*, as vendors of the goods, must be preserved to them, even if the assignment be set aside. It is not proved that this alleged lien of the vendor existed on the whole of the goods, nor indeed, as the case is presented, would we be able to say whether it existed at all: for *Hunt & Co.* being a New York house, there is strong reason to infer that the sale to *Malard* was made there. But, however this may be, it is clear that the landlord's lien is superior to that of the vendor's, who has made a delivery; and it cannot be contended that *Hunt & Co.* could place themselves in a better position, by fraudulently removing the goods beyond the landlord's reach and frustrating his search. To recognize such a doctrine would be to say, that a party could, by his own wrong, place a fair creditor *in duriori casu.* Three or four days after the removal, the sheriff was started in pursuit of the goods, and his return is as follows, to the writ by which he was commanded to seize them: "Rec'd, 2nd March, 1843. Nothing could be found; all the within mentioned property having been removed to parts unknown either to plaintiffs or sheriff."

That *Hunt & Co.* did not themselves do the acts complained of, is no defence. What was done, was done by their agent, in the management of their business and the prosecution of their interests, and they are equally responsible for its legal consequences. They do not repudiate the assignment, but claim under it, and hold on to the abstracted property.

It is contended that the amount of the goods was not equal to the amount of the judgments rendered. The evidence on this point is conflicting, but we are not able to say that there was manifest error in the finding of the court below. The judge of the Commercial Court, who heard the witnesses, thought the value was large enough to cover the complaining creditors; and the conduct of the defendants in secreting the property, and thus preventing a more accurate estimate of its value by impartial witnesses, gives a bad grace to their application in the appellate court for a reduction. See Civil Code, arts. 1965, 1972, 1977, 3185, 3230.            *Judgment affirmed.*