## No. 10,725.

### D. R. CARROLL vs. GEORGE W. BANCKER.

Plaintiff's privilege, as lessor, upon the crop of sugar and molasses, was lost by him, as he did not, in accordance with Article 2709, of the Civil Code, and 288 of the C. P., seize it before it was shipped to the market to be sold, nor within fifteen days after it had been removed from the leased plantation.

APPEAL from the Civil District Court, Parish of Orleans. Monroe, J.

Henry L. Lazarus for Plaintiff and Appellant.

Rice & Armstrong for Defendants and Appellees.

### ON APPLICATION FOR A REHEARING.

The opinion of the court was delivered by

BREAUX, J.    This suit has for object the enforcement of a lessor's privilege on the proceeds of a crop of sugar and molasses consigned by one of the defendants to his commission merchant, who sold it in this city.

### PLEADINGS.

Plaintiff alleged that he had a privilege; sued for a writ of sequestration and prayed for judgment against George W. Bancker, the lessee.

Hernandez, the pledgee, was not made a party to the suit.

*Notice* of the writ which issued in the case against Bancker was served on him on the day it was issued, viz.: December 3, 1886. On the 14th of December, on rule served on him, he was ordered to answer interrogatories in court, although he had not been made a party to the suit.

They were answered.

Evidence was heard on the trial of this rule.

On motion of plaintiff's counsel, this rule was discontinued on January 27, 1887. On the 18th day of April, same year, plaintiff filed a supplemental petition alleging that defendants had conspired to defraud him, and that in consequence Hernandez had become responsible. Hernandez was at said time made a party.

An exception of no cause of action was filed and maintained, with leave to amend.

At a subsequent date another supplemental petition was filed, in which it was alleged that Hernandez knew of the lease made by plaintiff, and that he schemed with lessee to secure the sugar and molasses from the plantation leased, and to hastily sell it, in order to defeat the lessor's lien. On issue joined the case was tried. The District Judge decided for plaintiff, and against the defendant, Geo. W. Bancker, for the rental, with legal interest.

The demand against Hernandez was rejected and the suit of sequestration dissolved.

From this judgment the plaintiff presents this appeal.

### STATEMENT OF THE CASE.

The consignor, G. W. Bancker, in 1876, cultivated two plantations in the parish of St. Martin; one the property of his wife, the other, adjacent that of the plaintiff, from whom he leased, for $2000 *per annum*.

There was no sugar house on the leased place.

On the 7th of June, 1886, the defendant, Bancker, executed an act of pledge, under Act 66 of 1874, in favor of Hernandez, to secure the sum of $2000, payable on the 15th day of December. This was a loan to enable him to cultivate his crop. The pledgor obligated himself in this act to consign to the pledgee all the sugar and molasses made on the plantation as soon as ready for market, to be sold and the proceeds to be imputed to the payment of the amounts due to the pledgee. The contract shows that the plantation was leased

by plaintiff to Bancker. This act was in due time recorded in the clerk's office.

Hernandez, whose testimony is not contradicted, testifies that the note due by Bancker for advances "was held as collateral."

"His account was to be paid as he shipped."

Bancker, the only other witness who testifies with reference to this matter, corroborates this testimony.

In September, Bancker shipped to his merchant, the pledgee, thirty-four barrels of molasses, proceeds of the crop on the leased place.

In October, one barrel, and the remainder of that crop was shipped at different times, from the 9th to the 24th of November.

The account of sales credit the proceeds of the sale of the last sugar and molasses made on the Carroll, leased, plantation on December 1.

The last entries on Bancker's account, on the credit side, are:

```
1886.
Nov. 29, 8 hhds. of sugar........................................................................$220 91
Dec. 1, "    "    "   ..................................................................... 260 67
   "    "   10 barrels molasses............................................................ 115 86
   "   4, 16 hhds. of sugar............................................................... 489 89
```

The last sugar, the sixteen hogsheads, were sold on the day notice was given to Hernandez of the sequestration.

These were not made on the leased plantation, but on the Bancker place.

The only testimony we have on the subject is the following by Bancker:

Q. "Do you remember what were the last shipments made by you to Mr. Hernandez, prior to December 3, 1886?"

A. "The last shipment I made was eight hogsheads of sugar on the 30th of November."

Q. "And next prior to that?"

A. "On the 29th of November."

Q. "What did you ship then?"

A. "Eight hogsheads of sugar."

Q. "Where was that sugar, those two lots, shipped from?"

A. "They were from Mrs. Bancker's plantation."

Q. "On which of these plantations, if either, had the cane which produced the sugar been raised?"

A. "On Mrs. Bancker's."

Q. "Had any portion of the cane, out of which these sixteen hogs-

heads of sugar were made, been raised and been at any time upon the plantation leased from Mrs. Carroll?"

A. "No, sir."

This witness also testifies that the crop made on the leased place was removed from the place more than fifteen days before it was shipped to the merchant.

The cane was cut and hauled to the sugar house, and manufactured into sugar. This, he says, occupied more than that number of days. In time the sugar and molasses were hauled to the depot; they were marked in the name of the lessee, Bancker, in whose name the bills of lading were issued and by whom they were mailed to the merchant.

That it was all sold prior to the 2d December, Hernandez testifying states:

"Sales had been rendered on the 4th of December, after the writ of sequestration had been served, sixteen hogsheads of sugar. That is all."

His testimony and that of Bancker made it evident that this sugar was not from the Carroll place, also that the proceeds from the sale of the sugar from cane on the Carroll place was credited on Bancker's account before service of the writ of sequestration, and that Hernandez did not know that the rental was still unpaid.

He testifies:

Q. "Did you know, as a matter of fact, that Mr. Bancker had not paid the rent to D. R. Carroll for the lease of the plantation?"

A. "I did not, sir."

No other witness testifies as to this matter except Bancker, who corroborates Hernandez. Relative to undue haste in selling the crop, the only witness is Hernandez himself, who was called in and examined as a witness for D. R. Carroll, plaintiff, and testified that he did not know whether the sugar came from the plantation of Bancker or from that of plaintiff, and that he sold it on its receipt, as he sold other crops.

On the trial of the rule, which was afterward discontinued, the counsel for Hernandez admitted "that for the purpose of this rule, but not as a matter of fact, that the sugar received from Mr. Bancker by Mr. Hernandez, was received by him on the days on which it was shown to have been sold, and that such date was the date of shipment from Mr. Bancker's plantation."

## ON THE MERITS.

Plaintiff has not argued that the fifteen days had not elapsed after the removal of the crop. That fact is referred to in his brief in the following terms:

"While it is true that plaintiff did not assert his rights within fifteen days after the removal of the cane from the plantation, it is likewise true that when he did assert his rights, it was not by the application of the conservatory writ of provisional seizure."

The question for solution is whether a lessor can recover the lessor's privilege fifteen days after removal, on sugar and molasses consigned by the planter, in due course of business, to his merchant, to whom he is indebted for more than the amount of his crop?

The plaintiff contends that the second section of Act 66 of 1874 provides for the shipment of the crop by the farmer, and the right of the consignee to sell the property and appropriate the proceeds of the sale to payment of the amount due for such advances as may have been made thereon, but that the effect of the section is therein limited "so that nothing shall be construed as to defeat or lessen the privileges of the laborers and landlord in this State for wages and rent as now existing by law," and in argument directs attention to the fact that the act of 1874 was amended in 1882, by extending the reservation so that the removal of the property and its consignment to the merchant would not have the effect of defeating or lessening "any other valid existing privilege or lien." Act 44 of the Acts of 1882, page 56.

These statutes have not added to the security of the lessor, nor have they repealed Article 2709 of the Civil Code.

"In the exercise of this right, the lessor may seize the objects which are subject to it before the lessee takes them away, or within fifteen days after they are taken away, if they continue to be the property of the lessee and can be identified."

The effect of removal of property subject to the lessor's lien has received corroboration in a number of decisions.

In Dennistown vs. Mallard, 2 An. 14, relied upon in support of the proposition that the privilege after the fifteen days have elapsed since the removal of the property, the court held that those who opposed the lessor's lien could not place themselves in a better position by fraudulently removing the goods beyond the landlord's reach and frustrating his search.

The goods had been clandestinely removed, in the night time, by one who was not a purchaser in good faith.

The plaintiffs, by supplemental petition, made the purchasers parties to the suit, and charged that the assignment was a fraudulent preference, to deprive them of the landlord lien.

The court decided that it was a fraudulent preference by an insolvent debtor, and that there was, besides, a breach of good faith toward the landlord, and a violation of his rights in the removal of the goods, and that the object of the removal was to defeat the lien.

There is marked dissimilarity between that case and the case at bar. The latter is not a revocatory action.

It is not alleged that the defendant is insolvent. It is not proven that the party, " with whom the debtor contracted, was in fraud, as well as the debtor." C. C. 1982.

In Desban vs. Picket, 16 An. 350, it was decided, on the authority of Article 2709 of the C. C., that the lessor's right of privilege for the payment of rent on the movable effects of the lessee, was extinguished by the removal and sale of the effects of the lessee, for a valuable consideration, although fifteen days between the removal by the lessees and the seizures by the lessor had not expired.

Similar conclusion was reached in St. Charles Hotel vs. Tarbox & Co., 23 An. 775.

In Washburn vs. Frank, agent, 31 An. 427, the testimony established that the property was removed to defraud the lessor, and that a simulated sale was made to defeat the privilege.

If the plaintiff had proven the allegations of fraud, these decisions would apply, and our conclusion would be different.

Without any evidence of fraud, the court will not order an amount realized on a crop openly manufactured and placed on the market, to be paid by the pledgee to the lessor, who remained inactive until several days after the sale.

Reverting to the decisions quoted, why would the court dwell upon the issue of fraud, and decide it, if the landlord's privilege is not limited to fifteen days after removal.

With or without fraud, it would be subject to the privilege, and there would be no necessity to prove it, in order to recover.

The consignment of the crop can not have the effect of defeating or lessening " any other valid existing privilege or lien."

The sale was made and the proceeds credited before any rights were asserted. They present this insurmountable difficulty to the recovery of plaintiff's claim.

The sale of this crop was not made *pendente lite*, in so far as Hernandez is concerned. If it be conceded that the mere notice given on the 3d of December was sufficient to bring the property within the grasp of the law, although no copy of the petition nor citation were served on the merchant, only a notice of a writ as having issued against Bancker, it is made manifest by the uncontradicted testimony of the only two witnesses who testified with reference to that matter, that the crop from the Carroll place had been sold before this notice was given, and at least four months before Hernandez was cited.

The writ of sequestration, issued in the usual form in a suit by plaintiff against his lessee, in executing the writ a notice given to third person will not make him a party to the suit and compel him to deliver the proceeds of property properly sold, and for which he contended he held a superior claim.

The plaintiff earnestly contends that the lessor's privilege should be construed as in the seizure of property by the sheriff on which the lessor has a privilege.

That officer holds the property or the proceeds of its sale subject to the legal rights of the creditors. It is in that case the possession of the law for the protection of their rights. It is not in commerce to the detriment of the creditors, but is held that their right may be determined.

In any case a privilege is lost if the property can no longer be identified. But when in due course of business, property is sold and the proceeds are applied to the payment of the pledge to a creditor, without objection after the fifteen days succeeding its removal, Articles 2709 of the C. C. and 288 C. P. apply.

When the case was tried on its merits, the following entry was made: "Counsel also offers and introduces in evidence the *testimony* of Charles H. Hernandez, taken in this suit in open court, on January 21, 1887," *i. e.*, the *testimony* received on the trial of the discontinued rule.

We have not given any effect to this admission, for the reason that it was part of the evidence on a rule discontinued.

An admission is not reproduced when the *testimony* of a party to

the suit is offered and admitted without any reference to the admission of counsel on the trial of a previously discontinued rule. The offer of the *testimony* of a witness taken in another case does not carry with it an admission of counsel of record.

It was not the evidence of the defendant in rule that was offered as admitted, but his testimony as a witness.

"The testimony is a species of evidence by means of witness." The broader term, evidence, includes that which is given by witnesses or afforded by documents.

If the admission on rule were before the court, what would it prove? That for the purpose of the trial of the rule—not as a matter of fact—"the sugar was shipped from Bancker plantation on the day it was received and sold by Hernandez."

The admission must be given effect as a whole, which amounts to the following:

That, not as a matter of fact, but for the purpose of the trial of the rule, sugar was shipped, etc.

This does not conflict with the testimony of the uncontradicted witness, that the crop was removed from the plaintiff's place more than fifteen days before it was shipped to the merchant.

The plaintiff's privilege was lost.

On an application for a rehearing by plaintiff, an oral argument was heard. The case having been considered, the previous decree of this court may be set aside, and the case decided without granting a rehearing.

It is now ordered, adjudged and decreed that our former decree be set aside, and that the judgment of the District Court appealed from is affirmed at appellant's cost.

### ON APPLICATION FOR REHEARING.

WATKINS, J. This case presents a controversy between Carroll, as the lessor of Bancker, and Hernandez as his factor; and, as the proceeds realized from the products raised on the leased premises are insufficient to pay both, the question for decision is, whether the former is entitled to preference in receiving payment therefrom over the latter.

Bancker shipped his entire crops of sugar and molasses to Hernandez for sale, and when sold they realized $1845.14. Sales of products were made antecedent to the institution and service of

this suit, but notification thereof was not given to Bancker until afterwards. At date of suit, Carroll's rent was due, but the supply-account of Hernandez was not; therefore, when suit was filed, no application of the proceeds had been made, or could have been made by Hernandez; but same were in his hands, as the factor and agent of Bancker, his customer.

Hernandez' claim and pretension are, that he had applied the proceeds to his supply-account, though subsequent to his being notified of Carroll's suit, and, confessedly, before his account was due.

Hernandez had no legal right to thus appropriate to himself the identical thing that was involved in Carroll's suit, *pendente lite.* Rev. Civ. Code 2543; Act No. 4 of 1878.

Hernandez's relation to the proceeds in his hands was that of factor of Bancker. *Lallande vs. His Creditors,* 42 An. 705.

We must, therefore, deal with the proceeds in his hands in the precise situation they were at the date Carroll served Hernandez with notice. Now, what was that situation?

On the 9th of June, 1886, Bancker executed an act of pledge in favor of Hernandez upon the crops to be grown on the plantation he had leased from Carroll, knowledge of which Hernandez confessed in the act. In that act Bancker contracted to ship the crops to Hernandez, and authorized him to sell the same and apply the proceeds to his account.

This act was drawn in pursuance of the terms of the Act of 1874, which confers upon the factor a right of *pledge* subordinate to the *lien* of the lessor under the provisions of the Civil Code; for that statute declares that nothing therein " shall be so *construed* as to defeat or lessen the privilege of the landlord for rent." Hence, it is clear that the stipulations of the act were binding on the parties, but not on Carroll, the lessor—the *pledge* of the act being subordinate to the *privilege* conferred by law on the landlord for rent of land.

Therefore, the question is, can the lessor's lien be defeated by a removal of the crops from the leased premises by the lessee, their shipment to his factor, and his conversion of them into proceeds?

I.

Claiming the right to apply the proceeds to his account against Bancker, by reason of the pledge he acquired under the Act of 1874,

Hernandez seeks " to defeat or lessen the privilege of (Carroll) the landlord for rent," in direct violation of its express prohibition.

Notwithstanding the Code of Practice declares that the lessor's lien may be enforced against the objects affected by it "in the hands of *third persons*" within fifteen days after removal from the leased premises, it does not declare that same *can not* be seized after the lapse of fifteen days, if *same continue to be the property of the lessee*, notwithstanding their removal from the leased premises.

Surely, such would be an absurd declaration for the Code to make, because the property of an ordinary debtor may be seized, anywhere it is found, under ordinary process; and it is not readily perceived why the law should place the lessor at so great a disadvantage as this suggestion would imply.

Hernandez does not possess the products, or their proceeds, *as owner*, but as the factor of Bancker, his customer. *Lallande vs. His Creditors*, 42 An. 705.

At the date of service, Hernandez had not applied them to his account, and he was not permitted to do so afterward. R. C. C. 2543.

Bancker's indebtedness was not then due.

Hernandez was not a *third person*, in respect to Carroll, or Bancker; and Hernandez can not interpose his possession as factor, with any greater show of success than Bancker could, against the demands of Carroll, his lessor. R. C. C. 2709; C. P. 288.

Whatever judicial opinion may have prevailed in respect to the provisions of the Codes, it is certainly true that Hernandez can not claim any precedence over Carroll, under the prohibitive terms of the statute on which he founds his right. It is of no importance to inquire whether fifteen days had elapsed or not, for the act declares that its provisions shall not be so *so construed* as to defeat or lessen the *privilege* of the landlord for rent of land.

Whatever may be the measure of protection accorded to third persons and *bona fide* purchasers, by the provisions of the Codes, it is quite certain that the act of 1874 accords none to the factor over the lessor's lien for rent.

Hernandez can not escape the prohibition of the act. It was not in the power of Hernandez and Bancker, by any covenants of theirs, to defeat or lessen Carroll's lien for rent; neither by the pledge of the crops, their shipment, sale, or application of the proceeds—all, alike, coming under the effects of the prohibition of the statute.

Hernandez's conversion of the products into proceeds, which remained in his hands as factor of Bancker, did not *impair* Carroll's right.    In my opinion, Dennistown vs. Mallard (2 An. 14) is applicable to the question at bar.

It appears that the plaintiff leased a small shop to Mallard, who, being in insolvent circumstances, made a sale of his stock to certain of his creditors, without paying his rent.

The court say:

"We entirely agree with the judge of the lower court in the conclusion to which he came, both that the assignment was a fraudulent preference by an insolvent debtor, and that there was besides a breach of good [faith towards the landlord, and a violation of his rights in the removal of the goods.    We consider the court below as justified in the opinion that the agent of (the creditors of the lessee) was aware that the lessor had not been paid, and that the object of the removal was to defeat (the lessor's) lien.    It is said that the lien was gone, because it was not exercised within the fifteen days by a levy on the property," etc.

    *      *      *      *      *      *      *      *

"It is clear that the landlord's lien is superior to that of the vendor who has made delivery, and it can not be contended that (the creditors of the lessee) could place themselves in a better position by fraudulently removing the goods beyond the landlord's reach, and frustrating his search.    To recognize such a doctrine would be to say that a party could, by his own wrong, place a *fair* creditor *in duriori casu.*"

While it is true that Hernandez did not possess himself of the crops of Bancker *fraudulently*, but through the instrumentality of his contract of pledge, he is none the less attempting to breach the contract rights of Carroll, the lessor of Bancker, by appropriating their proceeds in direct violation of the statute.

Hernandez knew of Carroll's lease to Bancker, as it was mentioned in his act of pledge to him.

He must have known that Carroll's rent had not been paid, as the total proceeds of Bancker's crops are in his hands.    It is manifest, that in thus attempting to impute said proceeds to his own account, Hernandez sought to defeat the claim of Carroll for rent, in spite of the act of 1874, and, as this court said, Mallard and his creditors

could not do. It was of no consequence that the fifteen-day limit had expired. Hernandez does not possess as *owner*, and is not, in any sense, a third person. He was, in duty bound, to abide, as a faithful agent and custodian, the prohibition of the statute, and deal fairly by the landlord, of whose rights he was advised.

## II.

Hernandez founds his right of detention of the proceeds exclusively on his contract of *pledge*, under the Planter's Act of 1874. That act confers *only* the right of *pledge*, for it says:

" That, in addition to the privilege now conferred by law, any planter or farmer may *pledge* his growing crops of cotton, sugar or other agricultural products, for advances of money, goods and necessary. supplies * * * which recorded contract shall give and confer on the merchant or other person advancing money, goods and necessary supplies, for the production of said agricultural products, a *right of pledge* upon the crops," etc. Section 1 of Act 66 of 1874.

It confers no lien or privilege whatever. This pledge is, in terms, subordinate to the lessor's lien, under existing laws, for it says:

"Nothing herein shall be so *construed as to lessen, or to defeat the privilege* of the laborers and landlords in this State, for wages and rent, as now existing by law." *Ibid*, Sec. 2.

What, then, is the lien which the law then existing conferred on a lessor?

The Civil Code declares it to be a *privilege* on the crops of the year. R. C. C. 3217.

But, in addition to this *privilege*, the law declares that the lessor has "for the payment of his rent, etc., * * * a right of *pledge* on the movable effects of the lessee," etc. R. C. C. 2705.

Privilege and pledge are totally different things, for the Code says:

" *Privilege* is a right the *nature of the debt* gives to a creditor, and enables him to be preferred before other creditors, even those who have mortgages" (R. C. C. 3188); but " a *pledge* is contract by which a debtor gives something to his creditor as a security for his debt." R. C. C. 3133.

Therefore, the effect of the act of 1874 on the farmer was to authorize him to pledge in advance a growing crop to his factor, for *future* advances, and to remove them from his plantation, and ship

69

them to said factor for sale, although the plantation be one the farmer has leased.

To this extent the statute enables the planter to impair, or lessen, the landlord's right of *pledge*—just as an ordinary creditor of the lessee might do by affecting a seizure under *fi. fa.* and making sale of crops pledged to a lessor. To this extent the provisions of the Civil Code are amended by implication. But the statute does not enable a planter, or factor, to defeat or lessen the landlord's *lien* on the crops or their proceeds.

The right of any ordinary creditor to seize and sell crops that are stricken with a lessor's *pledge* and convert them into proceeds, and thus relegate the landlord to the assertion of his lien thereon, by way of third opposition, is " everyday practice," and it is sustained. by numerous authorities.

On this question, it is only necessary for me to cite the case of Pickens vs. Wister, 31 An. 870, wherein all adjudicated cases are carefully collated and compared, and in which the court, with deliberation, held and affirmed the correctness of this doctrine.

The interpretation which our original opinion places upon the act. of 1874 rests upon the same foundation as those authorities do.

The true conception of the Legislature in adopting that statute appears to have been to enable the planter, under the exceptional circumstances stated therein, to *ship* his crops to market, and his factor to sell same and convert them into proceeds; but in so doing, it did not intend to authorize either " to defeat or lessen the landlord's lein for rent."

Under the provisions of this act the landlord's rights and remedies are precisely the same as though the crops had been seized and sold under *fi. fa.*, and the proceeds placed in the custody of the sheriff. In lieu of such legal custody, the Act of 1874 supplies the *trust of the factor*.

In no case or event does either a *lien* or right of *pledge* prevent a sale of the thing pledged or affected thereby, for the Code says:

" The pledgee acquires the right of possessing and retaining the movable which he has received in pledge as a security for his debt, *and may cause it to be sold.*" R. C. C. 3220, 3165.

These are the articles which authorize an ordinary creditor to seize and sell pledged goods and effects, as the Act of 1874 does the factor of the lessee, and thereby the creditor's *lien*, in each case, on

Carroll vs. Bancker.

the *thing* is not extinguished, but transferred to the proceeds, which may be distributed ratably and *in concursu.*

In construing these provisions the court said, in Robinson vs. Staples, 5 An. 712, that "the Article 2675"—the present article being 2705 of the Revised Edition—of the Civil Code, declares "that the lessor has, for the payment of his rent and other obligations of the lease, a right of pledge on the movable effects of the lessee.

\*  \*  \*  \*  \*  \*  \*  \*

"The right to levy a provisional seizure, even before the rent is due, is given by the statute of 1839 to the lessor, who has reason to believe that his tenant is about to remove his property. We do not consider this statute as *creating the privilege, but as providing a conservative remedy for its enforcement.*

"It is not, therefore, well argued by plaintiff's counsel, that the lessors can not have their *privilege* in this case, because they *did not make a provisional seizure under the statute.*"

In that case the landlord's lien was recognized and enforced on the *proceeds* in the sheriff's hands, and under the statute of 1874, Carroll is equally entitled to take them from Hernandez.

### III.

In my opinion, the fifteen-day limit fixed in the Civil Code exclusively relates to the *pledge* of the landlord, and not to his *lien* and *privilege* for rent.

It says: "The lessor has for the payment of his rent and other obligations of the lease, a right of *pledge* on the movable effects of the lessee, which are found on the premises leased." R. C. C. 2705 (2675).

In a subsequent article, in the same connection and chapter, it says:

"*In the exercise of this right*, the lessor may seize the objects which are subject to it, before the lessee takes them away, or within fifteen days after they are taken away, *if they continue to be the property of the lessee, and can be* identified." R. C. C. 2709 (2679).

The words of this last article, to-wit: "in the exercise of this right"—clearly refer to "the right of pledge," mentioned in the former article.

The lessor's *privilege* is not mentioned anywhere in the title " *of lease* " in the Code.

The *gravamen* of said two articles is, that the right of *pledge* may be exercised within fifteen days, if the property *continues to be that of the lessee,* which, under those articles, is a *sine qua non.* Those articles confer no right of enforcing this conservative remedy against goods which have been *alienated* by the lessee. This is the *law* of pledge. It is the *Code of Practice* which confers on the lessor the right to provisionally seize the goods of a lessee *in the hands of a third person,* within fifteen days. That is a method of *procedure* in the enforcement of the lien of the lessor, and not a matter of *law.*

That such is the case, the decisions that are quoted in the *present* opinion of the court will attest.

For, in Desbau vs. Pickitt, 16 An. 350, the court said:

"The right of seizure after removal is made to depend upon *the continued ownership of the lessee.*"

The same is true of the case of St. Charles Hotel Company vs. Tarbox, 23 An. 715, in which the court stated:

"In this case the evidence shows that the furniture claimed by the intervenors had ceased to belong to the lessee "—citing Desbau vs. Pickitt.

According to my reading of those two cases, there is nothing therein to indicate that seizures were made *after the lapse of fifteen days,* and, hence, there could have been nothing decided therein in reference to the *extinction* of the lessor's lien on that account.

Those cases turned, exclusively, on the *fact* of *sale* having been made by lessee; and, as it is not pretended that Bancker has *disposed* of the proceeds of his crops to any one, those decisions do not apply to the case at bar.

How can a mere failure to *exercise a remedy* provided by the Code of Practice, which is merely *permissive*—" *may seize, even in the hands of third persons,*" says Code of Practice, 288—*extinguish* a privilege which the *nature of the debt confers* upon the lessor? Surely, the debt itself is not thus extinguished, and the effects which are stricken with the lessor's lien may be removed before the debt falls due.

If it be true, as the court decided in Dennistown vs. Mallard, that a lessor's lien could be successfully asserted against movable property *after the expiration of fifteen days,* because they had been fraudulently removed; if it be true, as the court held in Pickens vs. Wister,

that an ordinary creditor can break the lessor's pledge by a seizure under *fi. fa.* and relegate the lessor to the *proceeds;* if it be true, as the court held in Robinson vs. Staples, that Civil Code, 2705, does not confer a privilege, but a right of pledge only, as a *conservative remedy* for the enforcement of a *privilege*, what becomes of the theory that the property affected with a *lien must be seized within fifteen days*, or it is lost?

But those decisions are in perfect keeping with the Civil Code, which declares, viz.:

"Privileges become extinct:

"1. By the *extinction of the thing* subject to the privilege.

"2. By the creditor acquiring the thing subject to it.

"3. By the extinction of the debt which gave birth to it.

"4. By prescription " (of the debt). R. C. C. 3277.

Unless a *sale* be considered the *extinction* of a thing stricken with the lessor's lien and right of pledge, the lien of Carroll has not yet become extinct. If that be true, however, then all those cases were, necessarily, decided wrong.

That principle which in those cases the courts decided as a matter of jurisprudence was, in the Act of 1874, consecrated as matter of law, viz., that its provisions should not be so construed as to defeat or lessen the lien of the landlord for rent.

It is that *principle* which, in my opinion, the present decision of the court sets at naught.

### IV.

But conceding, for the argument, that all of the foregoing propositions are not well grounded in law, and that the failure of the landlord to assert his privilege on Bancker's crops *within the fifteen-day limit* was fatal to his claim, let me examine and see how the case stands in point of fact.

The contention of Hernandez's counsel is that the evidence shows that the crops of Bancker, grown on the premises he leased from Carroll, had been removed more than fifteen days when Carroll's suit was filed.

The statement of Bancker in some respects gives color to this contention, but the admission of Hernandez (the *purport* of which is given in the *original* opinion) negatives its effect, and it is binding on him.

(a) Counsel for Hernandez denies the *force* and *correctness* of his

.alleged admission, and he also denies that such admission was offered and filed in evidence on the trial of the *merits* of the cause.

The *present* opinion of the court accedes to this view, and as the only fair way of reconciling conflicting statements of fact is to refer to the transcript, I will submit to that test the accuracy of the .statement contained in the original opinion of the court.

On the 21st of January, 1887, certain " testimony and notes of ·evidence " were taken by E. M. Brewer, stenograper, in behalf of Carroll, plaintiff in rule, in presence of H. L. Edwards, counsel for plaintiff, and Charles S. Rice, counsel for defendant. Transcript, page 7.

The notes of evidence show that " Mr. Charles Hernandez, witness," was " called on behalf of plaintiff in rule," and was duly ,sworn on " direct examination." Transcript, pages 8, 9, 10, 11 .and 12.

Same witness was cross-examined. Transcript, pages 12 and 13.

At the conclusion of that witness' cross-examination, on page 13 ·of the Transcript, is to be found the following admission, viz.:

" For the purposes of this rule, but not as a matter of fact, it is admitted that the sugar received from Mr. Bancker by Mr. Hernandez ·was received by him on the days on which it was shown to have been sold, and that *such date was the date of shipment* from Mr. Bancker's .plantations."

Then follows immediately this phrase:

" Mr. Hernandez recalled by Mr. Edwards." Transcript, page 13.

All of this transpired on the 21st of January, 1887, on the trial of plaintiff's rule, and on the 17th of June, 1890—just two days prior to ·the date of the judgment that is appealed from—the following oc- ·curred, viz.:

" Counsel offers and introduces in evidence, on behalf of Charles .Hernandez, the account marked 'A,' with reference to his evidence."

          *     *     *     *     *     *     *     *

"Also offers and introduces in evidence the testimony of Charles .Hernandez, taken in this suit, in open court, on January 21, 1887.

" Both sides closed." Transcript, page 55.

The foregoing is an exact reproduction of extracts from the tran- ,script, and I candidly and confidently submit, that said admission formed part of the defendant's evidence in the *trial of the rule*. It .is physically incorporated in it, and, as such, appears in the tran-

script.  *On the trial of the merits* of this case, the testimony of Her-
nandez, taken on the trial of the rule, was offered and filed in evi-
dence on his behalf, though the rule had been discontinued.   This is
shown by reference to name, date and case; and across the face o
the evidence is plainly written this endorsement, viz., "Filed June
17, 1890," corresponding with the minute entry quoted above.  Tran-
script, page 7.

If there is any escape from the conclusion that said admission *was
offered and filed in evidence on the trial of the merits,* I am at a loss to
discover where it is.

(*b*) But learned counsel is pleased to submit that the so-called
admission was, in point of fact, *no admission* at all; and, with ap-
parent seriousness, immediately quotes statements selected from the
brief of plaintiff's counsel as completely binding on him.

That an admission of defendant's counsel, made in open court, in
the presence of his client, then on the witness stand, incorporated in
his written testimony, and brought up in the transcript unaccompa-
nied by any statement of error, *does not bind the defendant,* while a
statement of fact, volunteered by counsel for plaintiff, in his brief, is
*conclusive on his client;* that the declaration that, because an admis-
sion of record is prefaced by the words, viz.,

"For the purpose of this rule, but not as matter of fact, it is ad-
mitted," etc.,—it is not the admission of *any* fact—are propositions I
can neither appreciate nor argue.

(*c*) But, further, conceding for the argument, that all we have
said is unfounded, and how does the case stand on the evidence of
Hernandez and Bancker?   Let me see.

Bancker testifies as follows, viz.:

"Q. How many days are occupied from the time the cane is *laid
down at the sugar house, until the sugar is ready for shipment?* Neces-
sarily occupied in the manufacture of sugar before it is ready for ship-
ment?

"A. From seven to nineteen days."

This is from his *direct* examination on behalf of Hernandez.  Tran-
script, p. 39.

Again:

"Q. When did you *ship* this sugar you made on Carroll's place to
Hernandez? You testified that the last shipment was off the Bancker

place. Now, I wish you would fix the date of the *last shipment you made of sugar made from the cane raised on the Carroll place.*

"A. From the 9th to the 24th of November." Transcript, pages. 32 and 33.

Again:

"Q. How, then, could you, by looking at the account, distinguish it from the molasses made on the Bancker place?

"A. For the reason that *I shipped all the sugar and molasses from the Carroll place before I ground the cane on the Bancker place.*"

"Q. When was the *first shipment made from the Bancker place?*

"A. *Made on the 29th of November.*" Transcript, page 38.

Again (on cross-examination he said) :

"Q. From the time the sugar left on the 29th and 30th to the 3d of December, it was not fifteen days?"

"A. No, sir."

*       *       *       *       *       *       *       *

"By Mr. Rice:

"Q. All the sugar on the 29th and 30th, and thereafter, was from Mrs. Bancker's plantation?

"A. Yes, sir." Transcript, p. 42.

Inasmuch as from seven to nineteen days are required for the manufacture of sugar, ready for shipment, and from the fact that the *last* shipments of sugar and molasses from the *Carroll place* were made between the 9th and 24th of November—it does not affirmatively appear that *any part* of same was either *manufactured off the Carroll place* or *shipped therefrom more than fifteen days* prior to the institution of this suit the 3d of December, 1886.

But, inasmuch as Bancker admits that the first shipment from his wife's plantation was made on the 30th of November, it is thereby tacitly admitted that all *sales* antecedent to 30th of November were made of the crop raised on the *Carroll plantation.*

The burden of proof being on Hernandez, it was his duty to have made out this defense clearly and satisfactorily.

When interrogated on this question, he said:

"Q. Did you receive any sugar from the *plantation owned by Mr. Carroll,* from the parish of St. Martin, leased by Geo. W. Bancker, and shipped by Geo. W. Bancker *during any day within fifteen days, dating from the 3d of December?*

" A. I would have to refer to my books to be able to answer that question, though my account will show it." Transcript, p. 9.

Recurring to Hernandez's account, to be found on pages 60 and 62 of the transcript, and we find and extract therefrom the following *data,* to-wit:

November 22, By 11 B. Molasses........................................................................... $84 37
    "    23,    6    "    .......................................................................... 45 61
    "    26,    12    "    .......................................................................... 120 24
    "    "    6 H. Sugar.......................................................................... 182 88
    "    27,    10    "    .......................................................................... 302 47
    "    "    6 B. Molasses .......................................................................... 71 53
    "    29,    8 H. Sugar.......................................................................... 220 91

    Aggregate value............................................................................$1028 01

This is the *identical* amount that is stated in our *original* opinion, to be "the net amount realized from crops which were shipped from the *Carroll place within fifteen previous to the* institution of this suit, and notification of plaintiff's writ to Hernandez, and the sheriff's demand on him for the crops or their proceeds."

It was on that evidence that our original opinion proceeded, though it was not therein reproduced, as it now is.

I respectfully submit, that whatever may be said on the question of law, in reference to that part of the crops that were shipped *antecedent* to the fifteen-day limit, Carroll is, at least, entitled to judgment for $1028.01, as the amount of the proceeds of that part of the crops that were shipped from his plantation *within* said limit. I therefore adhere to the views expressed in the original opinion of the court, and dissent from those expressed in the present opinion of the court.