PROVOSTY, J.
Plaintiff brings this suit sounding in damages ex delicto against J. C. Wolff Company and the Hibernia Bank & Trust Company on the allegation that they conspired together to remove from leased premises goods upon which he had a lessor’s privilege and right of pledge for the security of the payment of rent due him. Amount is claimed equal to the rent due.
Plaintiff alleges that his lessee, J. L. Morrison & Co., was absorbed by the defendant J. C. Wolff Co., and all its assets, as well *414 as the possession of the leased premises, taken over; that J. C. Wolff Co. pledged the goods on the leased premises to its codefendant, the Hibernia Bank & Trust Co., and that these two conspired together to deprive him of his lessor’s right of pledge and privilege on the goods on the leased premises, and in pursuance of said conspiracy removed and sold these goods, the Hibernia Bank & Trust Company attributing the proceeds to the payment of its debt to an amount more than sufficient to pay his said claim, knowing all the while that the said J. C. Wolff Co. was insolvent, and that the only possible chance he had of making good his said claim for rent was against the property thus removed and sold.
The defendants interposed an exception of no cause of action.
[1] In support of this exception, the learned counsel for the bank argue that the defendant bank did not assume the payment of this rent, and that therefore there is no cause of action.
This argument would have force if the plaintiff were suing ex contractu. But he is not. He is suing ex delicto.
[2] Next, the same learned counsel argue that the conspiring by one creditor with a debtor to deprive another creditor, or a superior right which he has by law over the property of the common debtor, does not constitute an actionable tort.
In support of the same exception the learned counsel for J. C. Wolff Co. argue broadly that the pledgee of goods subject to a lessor’s right of pledge and privilege has the right to remove them, subject only to the right of the lessor to seize them within 15 days from their removal, provided they have not, after their removal, been transferred to some third person ignorant of the lessor’s rights.
These arguments are utterly without foundation in law. The law is that:
“Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.”
If by the unlawful act of the two defendants the plaintiff has been deprived of a right which he had, and thereby has sustained a loss, the defendants are bound to repair it.
There can -be, under the allegations, no question but that plaintiff has sustained the loss, and that it has been caused by the act of the defendants; the only question, therefore, must be whether the act was unlawful.
That question was considered in Dennistown v. Malard, 2 La. Ann. 14. In that case a lessee sought to prefer the claim of his vendor to that of his lessor, and, after the goods had been removed and sold by the creditor thus sought to be preferred, the lessor brought suit against this creditor, and was given judgment for the amount of his rent. The principle of the case is announced in these words:
“It cannot be contended that Hunt & Co. [the creditor sought to be preferred] could place themselves in a better position by fraudulently removing the goods beyond the landlord’s reach and frustrating his search.”
In Worrell v. Vickers, 30 La. Ann. 204, the court said:
“The rights of the lessor cannot be affected by a sale made by a lessee to one of his creditors, and a fraudulent removal of the property from the leased promises 'by an agent of the purchaser for the purpose of placing it beyond the landlord’s reach” (citing Dennistown v. Malard, 2 La. Ann. 14).
Dennistown v. Malard, 2 La. Ann. 14, was inferentially approved in De Egana v. Jackson, 5 La. Ann. 430, where the court said:
“We do not consider the evidence as proving a fraudulent combination, so as to bring the case witMn the ruling in Dennistown v. Malard, 2 La. Ann. 16.”
In Hewitt v. Williams, 47 La. Ann. 754, 17 South. 273, Justices Watkins and Miller, dissenting on the question of whether a priv *416 ilege follows the property into the hands of a third person as does a mortgage, said:
“Then let us suppose that the lessee has disposed of the property which is subject to the lessor’s privilege; what is his recourse ? A. provisional seizure in disregard of the third possessor’s rights? Not at all. We find an answer to the question in the case of Dennistown v. Malard, 2 La. Ann. 14.”
The latter decision is reviewed approvingly.
In Carroll v. Bancker, 43 La. Ann. 1082, 10 South. 187, where the lessor was denied the right to enforce his right of pledge after 15 days from the removal of the property from the leased premises, the court distinguished the case from Dennistown v. Malard, saying that the goods had not been fraudulently removed, as in the Maiard Case, in violation of the lessor’s rights; that if this feature had appeared in the case the conclusion would have had to be different.
In Fetter v. Field, 1 La. Ann. 80, the court held that a vendor does not lose his privilege as against a third person who has taken the property in pajunent with knowledge of the insolvency of the debtor, and of the price for the goods not having been paid. The court based the decision on the principle that the third person could not acquire “without violating the rights” of the vendor.
“Inducing another, or conspiring with him, to break his contract, is an actionable tort.” Bigelow on Torts (8th Ed.) p. 261.
Bigelow, at page 256, states the general principle as follows:
“A., having knowledge or notice of the existence of a contract between B. and C., owes the duty to B. not to procure C. to break his contract, to B.’s damage.”
It is said that J. C. Wolff Co. had not assumed the obligations of the lease, and were not the lessees of plaintiff; that they violated no contractual obligations by removing the property. This is not so clear, under the allegation that J. C. Wolff Co. “absorbed” Morrison & Co., and took over all its assets. But conceding that there was no contractual obligation to be violated, there was the right of pledge and superior privilege of which plaintiff might be deprived, and the conspiracy to deprive plaintiff of this right' constituted a tort. This right was property; and the illegally depriving plaintiff of it was a violation of his rights and a tort.
Carpentier et Du Saint, vo. “Privileges,” No. 433, expresses the opinion that if the person who has removed the goods is no longer in possession of them, so that the lessor has lost his recourse against the goods, the lessor is not thereby bereft of all remedy; that he may sue the third person who has removed the goods in damages for the tort committed in depriving him of Ms right upon them. ■
In Cooper v. Cappel, 29 La. Ann. 213, the syllabus reads:
“The attempt of a lessee, or his vendee, to forcibly remove from the leased premises property subject to the lessor’s privilege is a trespass, sounding in damages.”
What a vendee cannot do, a pledgee cannot do; and fraud is no better legal ground to stand on than force.
In 19 A. & E. E. of L. p. 350, it is said:
“In many cases it has been held that a stranger, acquiring possession of property subject to a landlord’s lien, with notice of the lien, holding it as the tenant held it, subject to the lien, is guilty of a tort, to the damage of the landlord, if he disposes of the property so as to prevent the enforcement of the lien, and for this tort an action on the case will lie at the suit of the landlord.”
“Any person who knowingly, by purchase or otherwise, deprives the landlord of the opportunity of enforcing his lien is guilty of a tort, and the landlord has a right of action for the damage sustained.” 24 Cyc. 1267.
The Alabama reports furnish numerous cases the exact parallel of the present one.
It is argued that the pledgee might have caused the property to be seized and sold to satisfy the pledged debt, and that in such case the sole remedy of the lessor would have *418 been to intervene in the suit and claim a superior right. That is true, but in such a case the lessor would not have been deprived of his opportunity to make good his right. And, again, in such case, the pledgee would he exercising his legal right; whereas when he conspires with the tenant, or the person standing in his place, to remove the goods for the purpose of defeating the superior right of the lessor, he is not exercising a legal right, but is illegally depriving the lessor of his superior right of pledge, and therefore committing a tort.
The defendants interposed also pleas of prescription of 15 days and 1 year, 15 days to the right of the lessor to seize the goods, and 1 year to the suit in damages ex delicto. The first of these pleas need not be noticed further than to say that the plaintiff is not seeking to seize the goods. The other plea has been submitted on the face of the papers, and therefore has to be so disposed of.
[3] For the purpose, doubtless, of forestalling it, the plaintiff alleged that in order to lull him into a false security, and keep him from discovering the removal of the goods, the defendants continued to pay the rent after all the goods had been removed until all the goods had been sold, and that this suit was brought within the year from and after the last payment of rent. And the question arises whether by these acts of the defendants, whereby the removal of the goods is alleged to have been sought to be prevented from being discovered, the course of the prescription was suspended.
For the negative it is said that the rule, “Contra non valentem agere non currit prescripts,” is not recognized in this state; and the case of Cox v. Von Ahlefeldt, 105 La. 584, 80 South. 175, is cited. In that case the court recognized that this rule did apply to certain cases exceptional in their features. A further exception must be recognized, we think, in a ease like the present, where the inability of the plaintiff to act was brought about by the practices of the defendants. Otherwise the defendants would be profiting by their own wrong — a thing inadmissible in law. A defendant, who has kept a plaintiff in close confinement during the prescriptive period so as to preclude his bringing suit,, could certainly not be allowed to invoke prescription against plaintiff’s suit, and thereby reap the fruit of his own wrong. And between incapacitating a plaintiff by confining his body and incapacitating him by fraudulently lulling his mind into a false security and keeping him in ignorance there is no difference in principle. The one mode of preventing the bringing of suit, if equally effective, is as bad as the other. It is equally a wrong of which the perpetrator cannot be allowed to reap the benefit.
In the case of Jones v. T. & P. R. R. Co., 125 La. 542, 51 South. 582, 136 Am. St. Rep. 339, the court held that prescription began to run only when the cause of action had—
“manifested itself with sufficient certainty to be susceptible of proof in a court of justice.”
In Woodward-Wight v. Engel Land & L. Co., 123 La. 1093, 49 South. 719, the court held that prescription could not begin to run against a redhibitory action for defects in a machine so long as these defects were not understood to be of such a character as to justify the action.
These two cases are subsequent in date to Cox v. Von Ahlefeldt. Other illustrative cases antedating that case are abundant.
In Hernandez v. Montgomery, 2 Mart. (N. S.) 422, prescription of an action upon a marshal’s bond for the proceeds of a sale made by him, for which he had failed to account, was held not to have begun to run so long as the right of the plaintiff to these proceeds had not been determined in another suit in which, it was contested.
In Landry v. L’Eglise, 3 La. 219, held that, where a clause in the contract precluded plain *420 tiff from suing until lie had exhausted an- ’ other certain remedy, prescription did not begin to run until he had exhausted this remedy. The court said that the party pleading the prescription—
“certainly opposes with a bad grace prescription to a demand, which through his own fault, the creditor was prevented from enforcing earlier by suit.”
The provisions of the Code Napoleon, in regard to the interruption and the suspension of prescription, are the same as ours. Our article 3521, reads:
“Prescription runs against all persons, unless they are included in some exception established by law.”
This article is a verbatim translation of article 2251 of that Code. Such being the case, the following quotation from Boyle v. Mann, 4 La. Ann. 170 (where the defendant had gone to Mexico to avoid being cited) are apposite:
“We consider this a proper case for the application of the rule, ‘contra non valentem.’ All acts or hindrances — voies de fait et empechemens —coming from the debtor, which deprive the creditor of the remedy and forum contemplated at the time of the contract, suspend prescription. 2 Troplong, Prescription, 725. The Commercial Code of France establishes, for bills of exchange, a prescription similar to that which is here pleaded. It has been held there that this prescription cannot be opposed by the drawer of a bill, who, before the expiration of the- 5 years, obtained it confidentially from the holder, and wrongfully kept it beyond the time at which prescription would have accrued. 2 Troplong, loco citato. And again, after the drawer of a bill of exchange has failed, and the bill has been placed bjr the holder in the hands of the syndic, if the syndic fails or refuses to return it, the prescription of 5 years is suspended from the day of such failure or refusal. Dalloz, 1845, 1st part, p. 29.”
In Hardee v. Dunn, 13 La. Ann. 161, where the pendency of oppositions had delayed the appointment of a receiver, the court held that prescription could not run.
And so in Guilliet v. Erwin, 7 La. 581, where absence of the defendant from the state had made it impossible to bring suit.
By article 2512 of the Code prescription does not run against the redhibitory action when the seller has knowledge of the defects of the thing sold and fails to make them known to the purchaser.
In Martin v. Jennings, 10 La. Ann. 553, the court held that prescription does not run so long as the plaintiff is prevented from suing by some act or hindrance of the defendant.
Referring to that case, and to Boyle v. Mann, supra, this court said in Rabel v. Pourciau, 20 La. Ann. 131, that they fell in that category of cases where the debtor has done some act to prevent the creditor from availing himself of his action.
In Succ. of Farmer, 32 La. Ann. 1037, held that prescription did not run on the claims of an administratrix against the succession represented by her.
In McKnight v. Calhoun, 36 La. Ann. 408, held prescription did not run on the claims of a succession against the beneficiary heirs so long as one of these heirs was administrator of the succession. The court said:
“But, being forcibly reminded, by their knowledge of jurisprudence, of the doctrine of ‘Contra non valentem,’ etc., which had been practically recognized in the early stages of our jurisprudence, they hastily retreat on the position that the doctrine is inconsistent with the spirit of our legislation, and they intrench themselves within the protection of the decision in the case of Smith v. Stewart, 21 La. Ann. 67, 99 Am. Dec. 709, in which the court, as then composed, laid down the opinion that the doctrine had no application in our system of jurisprudence, which admits of no other mode of suspending prescription beyond the means enumerated in the Civil Code.
“It is evident that counsel have not yet considered the decision in the case of the Succession of Farmer, 32 La. Ann.1 1037, which unreservedly recognizes the doctrine and has thus restored jurisprudence to the former position occupied by this court.”
The expression here is evidently too broad, and is not meant to be approved by being reproduced.
In Succ. of Ball, 43 La. Ann. 342, 9 South. 45, held that prescription does not begin to run against an action for reduction of an excessive donation until the solvency or in *422 solvency ’of the succession has been ascertained.
It might not be out of place to observe that, in the decision in Cox v. Von Ahlefeldt, one of the justices took no part, and two of them concurred in part and dissented in part; and that the justice to whom the justices who took no part had succeeded on the bench had dissented; and that, at most, the decision is authority only for the proposition that mere ignorance, not brought about or fostered by the machinations of the party opposing prescription, is not good ground for invoking the maxim, “Contra non valentem.” The decisions of Smith v. Stewart, 21 La. Ann. 75, 99 Am. Dec. 709; Soulie v. Ranson, 29 La. Ann. 161, and Succ. of Winn, 33 La. Ann. 1392, are opposed to universal jurisprudence, and were severely criticized by the Supreme Court of the United States in Levy v. Stewart, 11 Wall. 254, 20 L. Ed. 89, and were expressly overruled by this court in Succ. of Farmer, 32 La. Ann. 1037, and in McKnight v. Calhoun, 36 La. Ann. 408.
In 25 Cyc. 1213, the rule is laid down as follows:
“The general statement of the rule as to the effect of a fraudulent concealment of a cause of action, where such rule is applicable, is that when a party against whom a cause of action exists in favor of another by fraud or concealment prevents such other from obtaining knowledge thereof, the statute of limitations will commence to run only from the time the cause of action is discovered, or might have been discovered, by the exercise of diligence.”
In Decennial Dig. § 104, vo. “Limitations,” the rule is stated as follows:
“Concealment and fraud constitute an implied exception to the statute of limitations, and a party who wrongfully conceals material facts, and thereby prevents a discovery of his wrong, or the fact that a cause of action has accrued against him, is not allowed to take advantage of his wrong by setting up the statute. ”v
A case markedly in point is Boyd v. Boyd, 27 Ind. 429, at page 430, where the court said:
“But it does not occur to us that [for the statute not to run] it needs to be concocted after the accruing of the cause of action, provided it operates afterwards as a means of the concealment, and was so intended. In other language, the defendant must not, at any time, do anything to prevent the plaintiff from ascertaining, subsequently to the transaction out of which the right of action arises, the facts upon which that right depends, either by affirmatively hiding the truth, enhancing the natural difficulties of discovering it, or by any device avoiding inquiry which would result in discovery; and if he do thereby escape suit for a time, the statute of limitations will not run during that time.”
In Findley v. Stewart, 46 Iowa, 656, the syllabus reads:
“Statute of Limitations — Fraud.. When a party against whom a cause of action exists, by fraud or actual _ fraudulent concealment prevents the party in whose favor it exists from obtaining knowledge of it, the statute only commences to run from the time the right of action is discovered, or might, by the use of diligence, have been discovered.”
Same in Bradford v. McCormick, 71 Iowa, 129, 32 N. W. 93.
In First Mass. Turnpike Corp. v. Field, 3 Mass. 201, 3 Am. Dec. 124, where the defendant had covered up the defective work in a road so that the defects developed only after the prescriptive period had run, prescription was held not to apply.
The remarks of the court in that case are apposite in this:
“On principle there can be but one opinion. In this the moral sense of all mankind must occur. The defendants undertook to perform a piece of business for the plaintiffs, and were paid for it. In the performance of their contract they acted fraudulently and deceitfully, to the detriment of the plaintiffs. Upon the discovery of the fraud, and within the time limited for bringing this species of action, the plaintiffs demand redress of the wrong which they have received. By the pleadings, all this is acknowledged by the defendants; but they say the plaintiffs cannot recover, because more than 6 years have intervened since they received the plaintiffs’ money, and since they completed the road in the manner in which they made it. Is this an answer which ought to be deemed satisfactory in a court of justice? I think not. * * * The delay of bringing the suit is owing to the fraud of the defendant, and the cause of action against him ought not to be considered, as having accrued, until the plaintiff could obtain the knowledge that he had a cause of ac-r tion. If this knowledge is fraudulently conceal *424 ed from him by the defendant, we should violate a sound rule of law if we permitted the defendant to avail himself of his own fraud.”
We do not cite the civil law authorities further than has been done for the reason that the rule, “Contra non valentem, agere non currit preseriptio,” is there recognized in its full scope and operation.
The decision in Cox v. Von Ahlefeldt in no wise militates against the proposition that a wrongdoer cannot be allowed to reap the fruits of his wrong because of the fact that through further fraud and deceit he keeps the injured person in ignorance of what has been done until the prescriptive period has run.
“The doctrine of equitable estoppel may, in a proper case, be invoked to prevent defendant from relying upon the statute of limitations, it being laid down as a general principle that when a defendant, electing to set up the statute, previously by deception or any violation of duty toward jplaintiff has caused him to subject his claim to the statutory bar, he, must be charged with having wrongfully obtained an advantage which equity will not allow him to hold.” 25 Cyc. 1016, Limitation of Actions.
“Where a defendant has, by deception or by any violation of duty towards plaintiff, caused him to subject his claim to the bar of limitations, equity will not permit him to hold the advantage thus obtained.” Clark v. Augustine, 62 N. J. Eq. 689, 51 Atl. 68.
“A court of equity may enjoin a defendant in an action at law from using the statute of limitations fraudulently, and this even where the cause of action did not arise out of a fraudulent act, if defendant has misled plaintiff in regard to it.” Holloway v. Appelget, 55 N. J. Eq. 583, 40 Atl. 27, 62 Am. St. Rep. 827.
“The general statement of the rule as to the effect of a fraudulent concealment of a cause of action, where such rule is applicable, is that when a party, against whom a cause of action exists in favor of another, by fraud or concealment prevents such other from obtaining knowledge thereof, the statute of limitations will commence to run only from the time the cause of action is discovered or might have been discovered by the exercise of diligence.” 25 Cyc. p. 1213, Lim. of Actions.
“Those who claim exemption from prescription by reason of ignorance resulting from fraud must allege and show that such ignorance was neither willful nor negligent.” Cox v. Von Ahlefeldt, 105 La. 543, 30 South. 175.
■ This point, in connection with the removal of goods by a lessee, has been considered by the French writers. The view taken by them is that the mere removal of the goods, though operated clandestinely — for instance during the night — will not suffice for suspending the course of the prescription of 15 days (under the Code Napoleon, 15 days in the case of houses, and 40 in the case of lands), but that if, not content with merely removing the goods secretly, the parties have recourse t<? some device for keeping the lessor in ignorance of their removal, for instance, bribe the watchman, then that this fraud will suspend the course of the prescription. A Carpentier et Du Saint, vo. “Privileges,” No. 429.
In the case at bar, the allegation is that the parties had recourse to the continued 'payment of the rent, and that this device proved effective. The allegation is that this rent was in reality paid by the Hibernia Bank & Trust Co.
The bank did not owe this debt, and if the contention of defendants be correct that J. C. Wolff Company did not succeed to the contractual relations of Morrison Company as lessee, J. C. Wolff Company did not owe it, from which it would follow that these payments were not made in satisfaction of any debt, and that as it is not pretended that they were made by way of charity, or as gifts dictated by affection or friendship, the motive for making them must be sought and found in the reason alleged by plaintiff, namely, that they were made as a device to lull him into a false security and keep him from becoming aware q£ the removal of the goods.
If, as contended, J. C. Wolff Company was not lessee, and stood in no contractual relation towards plaintiff, the sole reason there could be for rent being paid to the plaintiff was because of the goods being on the leased premises. Continued ■ payment of rent was therefore in the nature of a representation that the goods continued to be on the leased premises. The defendants, having actively contributed to -keep the plaintiff in ignorance, *426 are not in a position to say that this ignorance was due to a lack of diligence on the part of plaintiff.
The judgment appealed from is therefore set aside, the plea of no cause of action is overruled, the plea or prescription is referred to the merits, and the case is remanded, to be proceeded with according to the law.
O’NIELL, J., dissents.
See concurring opinion of MONROE, O. J., 71 South. 603.