ARKANSAS NATURAL GAS CO. v. SARTOR et al.

SARTOR et al. v. ARKANSAS NATURAL GAS CO.

Nos. 7467, 7522.

Circuit Court of Appeals, Fifth Circuit.

Aug. 23, 1935.

Rehearing Denied Sept. 24, 1935.

See, also (D. C.) 7 F. Supp. 1016.

Elias Goldstein and H. C. Walker, Jr., both of Shreveport, La., for Arkansas Natural Gas Co.

G. P. Bullis, of Vidalia, La., for Sartor and others.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

FOSTER, Circuit Judge.

These cases present an appeal by defendant and a cross-appeal by plaintiffs from the same judgment and may be conveniently disposed of by one opinion. To avoid confusion the parties will be referred to as they appeared in the Dis-

trict Court. The suit was filed on March 20, 1933, by James M. Sartor, Frank B. Sartor, and Daniel R. Sartor, owners of three-fifths of a royalty of one-eighth of the gas produced from an oil and gas lease. Payments had been made and accepted at the rate of 3 cents per 1,000 cubic feet of gas. Plaintiffs alleged that the rate should have been at least 6½ cents and sued for the difference. The case was tried to a jury and resulted in a verdict in favor of plaintiffs fixing the rate at 4½ cents. Various errors assigned will be considered in the course of the opinion.

The parties entered into a stipulation as to many material facts, reserving the right to object to the introduction in evidence of any part of the stipulation. The record shows the following facts: On March 7, 1927, E. A. Sartor and F. B. Sartor executed an oil and gas lease to Natural Gas & Fuel Corporation, covering some 500 acres of land in Richland parish, La., for a consideration of $17,500 cash and a royalty of one-eighth of the value of the gas produced and sold from the premises, to be calculated at the rate of market price but not less than 3 cents per 1,000 cubic feet, corrected to 2 pounds above atmospheric pressure. The lessee was under the obligation to develop the property and market the product. The lessors were under no obligation except to warrant title to the land. The lease was subsequently assigned to defendant. Four wells were drilled on the land and produced only gas. From these wells 10,544,960,000 cubic feet of gas were produced, calculated at 2 pounds over atmospheric pressure, according to the lease, during the period covering the years 1927 to 1932, inclusive. Production dropped from 3,171,865,000 cubic feet in 1928 to 1,214,867,000 in 1932. Monthly returns of the amount of gas sold and monthly payments of the royalty, at the rate of 3 cents were made to Dr. E. A. Sartor, one of the lessees, who was also agent of the other owners. It is not disputed that these returns and payments were correct if the market price did not exceed 3 cents. By a pooling agreement entered into on November 18, 1926, Frank B. Sartor, E. A. Sartor, D. R. Sartor, James M. Sartor, and Thomas R. Sartor had each acquired one-fifth ownership in the royalty. Dr. Sartor and Thomas R. Sartor are not parties to the suit.

To prove market price, plaintiffs offered a number of written contracts for the sale of gas, which were admitted in evidence over the objection of defendant. The material conditions of these contracts were similar and it was stipulated that the prices were for gas computed at 8 ounces pressure. It was further stipulated that the contract designated as No. 1 was typical. The material features of contract No. 1 are these: It was entered into on May 10, 1929, between Industrial Gas Company as the seller to Arkansas-Louisiana Petroleum Company, a subsidiary of defendant, as the buyer, for a term of ten years. The seller declared it was the owner of a large number of gas producing properties, including lands, leases, and gas purchasing contracts in the Monroe (Ouachita parish) and Richland parish gas fields. The buyer was the owner of certain pipe lines used for the transportation of gas from the Monroe and Richland fields to the town boundaries of various towns in the states of Texas, Louisiana, and Arkansas. The contract declared that the purposes of the buyer in entering into the contract were to increase its own supply of gas and provide a future supply of gas for the purposes of distribution and sale. The seller agreed to deliver not less than 5½ billion cubic feet and not more than 11 billion cubic feet of gas a year, the buyer to have the option to determine the amount to be delivered within those limits and also the right, upon six months' notice, to increase the minimum and maximum amounts, provided the maximum should be always twice the minimum and not more than 30,000,000,000 cubic feet should be required to be delivered by the seller in any one year. Two places of delivery were stipulated, both in Union parish, La. The seller was obliged to warrant title to the gas, to indemnify the buyer from all suits, damages, and expenses arising from adverse claims, including claims of the state of Louisiana for taxes, if any. The seller also agreed to use due diligence in drilling and operating its gas properties so as to be able to deliver such amounts of gas as the buyer might require under the contract. The prices to be paid were: For 45 per cent. of the monthly deliveries from May, 1929, through December, 1930, 3 cents, and for the next three years 4 cents; for 55 per cent. of the deliveries from May, 1929, to August, 1932, 4 cents; and from

September 1, 1932, through December 31, 1932, 5 cents. Prices for the later period of the contract were not shown.

There was undisputed testimony tending to show that the estimated life of the Richland field was relatively short as compared to the Monroe field, approximately 3 to 5 years as compared to 15 to 20 years; that pipe lines could be constructed only upon the basis of amortizing their cost over a long period of years and none would have been built in the Richland field except for the fact that people selling gas in that field were also able to guarantee a supply from the Monroe field; that the obligations of the contracts introduced guaranteeing deliveries of large quantities of gas from both the Monroe and Richland fields were of prime importance and the fundamental consideration inducing the buyer to enter into them.

It was stipulated that the average cost of transporting gas from the well to a pipe line was 3/10 of 1 cent per 1,000 cubic feet, and that the market price of gas at 2 pounds pressure is 10 per cent. greater than the market price for the same quantity at 8 ounces pressure.

It was stipulated that all the gas produced in the Richland field is produced under and by right of leases approximately similar in form to the lease in suit, except that about two-thirds of the leases stipulated for a royalty of 3 cents per 1,000 cubic feet instead of a royalty of market price. This stipulation was excluded on objection of plaintiff.

Defendant offered as a witness H. H. Hargrove, who was qualified by the court and permitted to testify as an expert. In the course of his examination he was asked: "What has been the established market price at the well in Richland parish field during the entire period beginning with 1928 up to date?" And again: "At what price or prices to your personal knowledge have sales of gas by operators and producers at the well in Richland parish field been made during the period 1928 to 1932, exclusive of these pipe line contracts?"

Plaintiffs objected to the questions on the ground that the witness could not give his opinion upon a matter that was for the judge and the jury to decide and that the sales were the best evidence. The objection was sustained and the answers to the questions excluded.

Error is assigned to the rulings of the court as above set out.

The District Court interpreted the lease to mean that market price was the average price in the field at the well. If this exceeded 3 cents per 1,000 cubic feet, from time to time, plaintiff was entitled to recover the difference. He so charged the jury and exception was not taken thereto. We may accept the interpretation of the District Court as reasonable and within the contemplation of the parties. It also conforms to the interpretation of similar contracts by the Louisiana courts. Wall v. United Gas Public Service Co., 178 La. 908, 152 So. 561.

As applied to this case, the term "market price" is interchangeable with the term "market value." In the nature of things there could be no open market for natural gas. It is admitted there are no exchange quotations or other evidence to be obtained of open and notorious market prices at which any one desiring gas could purchase it, as would be available in the sale of other commodities. In this situation the modern rule is that value may be shown by evidence of other sales, provided the conditions are substantially similar, but not otherwise. Wigmore on Evidence (2d Ed.) § 463; Jones' Evidence, Civil Cases, § 169; Kerr v. South Park Commissioners, 117 U. S. 379, 6 S. Ct. 801, 29 L. Ed. 924. Other sales may be shown by verbal testimony as well as by documentary evidence. In fact, oral evidence is, in many cases, preferable since, if nothing but the deed is produced, there is no opportunity to cross-examine the parties to the sale to determine whether the price is fair. Jones' Evidence, Civil Cases, § 168.

It is also well settled that value may be shown by the opinion of any competent person having knowledge of the facts, whether an expert or an ordinary witness. In Montana Railway Co. v. Warren, 137 U. S. 348–353, 11 S. Ct. 96, 97, 34 L. Ed. 681, it was said: "At best, evidence of value is largely a matter of opinion." See, also, Nelson v. First Nat. Bank (C. C. A.) 69 F. 798; Missouri, K. & T. Ry. Co. v. Truskett (C. C. A.) 104 F. 728, affirmed 186 U. S. 480, 22 S. Ct. 943, 46 L. Ed. 1259; Julian Petroleum Corporation v. Courtney Petroleum Co. (C. C. A.) 22 F.(2d) 360; Jones' Evidence, Civil Cases, § 387.

928

■ Applying these rules, it is apparent that the contracts offered by plaintiff were inadmissible. The facts that delivery was made at pipe lines, instead of the well, and that the prices shown were for gas at a pressure of 8 ounces, instead of 2 pounds, would not be serious objections if that were all. Under the stipulations in the record above set out, the jury could have ascertained the value of the gas at the well by a simple calculation. However, this is not true as to other features of the contracts offered. In this case the lessors were under no obligation to deliver any gas at all nor to guarantee that the land would produce any definite quantity annually or over a period of time. In fact, as production was declining, they were not in a position to do so. The undisputed testimony supports the conclusion that the guaranty to deliver large amounts of gas formed part of the consideration for the prices paid, in the contracts that were admitted. There was no possible way in which the jury could determine accurately how much this amounted to and it was not within their province to guess at it. It is also apparent that the stipulation as to average prices paid under contracts substantially similar to the lease in suit was improperly excluded. The same is true in respect to the testimony of Hargrove wherein his opinion as to the established market price at the well and the prices paid in other sales, under substantially similar conditions, was sought to be elicited.

The assignments above discussed show error prejudicial to defendant.

Defendant pleaded the prescription of three years, under the provisions of article 3538, La. Civil Code, as to all of the claim accruing more than three years before suit was filed. In anticipation of the plea, the petition alleged, that plaintiffs were ignorant of the market price of gas until November, 1932, and it could be ascertained only from sales made by defendant and other producers, which had been kept secret and hidden from the public and plaintiffs. On this point, D. R. Sartor, one of the plaintiffs, testified, in substance, that he lived in the Richland field, keeping a store at Alto; that he talked to several people and asked them if they knew what price the pipe line companies were paying for gas, and they did not know; that he had made no examination of the public records of Richland parish; that he knew that his brother Dr. E. A. Sartor was receiving monthly reports and remittances for the gas, and he left that to Dr. Sartor; that the last time he inquired of Dr. Sartor about gas prices was in 1928; that he then said he did not know anything about them; that Dr. Sartor practices in Shreveport and he sees him about once a month; that since the Richland gas field was discovered, in 1926, Dr. Sartor has been dealing in gas leases, buying and selling them and dealing with gas companies; that he had never inquired of defendant as to what market prices were. Dr. Sartor and Thomas R. Sartor, not parties to the suit but co-owners equally interested, did not testify nor did the other plaintiffs. Heard, secretary of defendant, testified that information as to gas prices obtained by defendant was not kept secret and would have been furnished plaintiffs had they asked for it. It was stipulated no demand for information had ever been made upon defendant. This was all the material evidence on the question of prescription.

The District Court left it to the jury to decide whether any part of the claim was barred by prescription, charging them, in substance, that the plea was good, in the absence of serious error or mistake on the part of plaintiffs, but if plaintiffs had proven by a fair preponderance of the evidence that there was serious error, mistake, or misunderstanding as to what the true price or market price of gas was, then prescription would not begin to run until the true facts were discovered. Defendant excepted to the submission of the question of prescription to the jury, on the ground that it was a legal question to be decided by the court. Error is assigned to the action of the court in this respect.

■ The plea was good prima facie. Board of Com'rs, etc., v. Pure Oil Co., 167 La. 801, 120 So. 373. Under the law of Louisiana prescription does not run against one who is ignorant of his rights, provided the party pleading it has been guilty of fraud that contributes to the want of knowledge on the part of plaintiff. Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598. But in the absence of fraud, prescription runs against all persons, unless exempted by some provision of the statute. Plaintiffs are not

protected by any statutory exemption. In Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175, it was said that those who claim exemption from prescription by reason of ignorance resulting from fraud must allege and show that such ignorance was neither willful nor negligent; and again, in Littlefield v. City of Shreveport, 148 La. 693, 87 So. 714, it was said that mere passivity cannot arrest the course of prescription, good faith not being required on the part of the person pleading prescription. La. Civil Code, art. 3550.

The above-cited decisions of the Supreme Court of Louisiana are in line with the general jurisprudence of the country. Statutes of limitation are founded on public policy and are favored in the law. Mere ignorance of one's rights will not toll the statute of limitations. Concealment by defendant only by silence is not enough. He must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry. There must be reasonable diligence on the part of plaintiff and the means of knowledge are the same in effect as knowledge itself. Anderson v. Gailey (D. C.) 33 F.(2d) 589; Insurance Co. of North America v. Parr (C. C. A.) 44 F.(2d) 573; Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807; United States v. Oregon Lumber Co., 260 U. S. 290, 43 S. Ct. 100, 67 L. Ed. 261. We know of no decision, either of controlling authority or persuasive, holding that mere ignorance on the part of the creditor will toll the statute.

It is true that where the evidence is conflicting or reasonable minds may draw different conclusions from it, the question of whether the statute would bar the suit is for the jury, but it is elementary that where the evidence is all one way the question becomes one of law for the court. In this case fraud on the part of defendant is neither alleged nor proven. The case for the plaintiff is very much weakened, if not entirely destroyed, by the failure to call Dr. E. A. Sartor as a witness or to prove his unavailability. Dr. Sartor acted as agent for plaintiffs in collecting royalty and they would necessarily be charged with any knowledge that he might have of market prices. The uncontradicted evidence is that if plaintiffs had inquired of defendant they would have been given such information as to market prices as the defendant had. The defendant was under no obligation to do more. We consider that in the circumstances shown the court should have instructed the jury to sustain the plea of prescription. Prejudicial error is shown by this assignment.

As what has been said above requires a reversal of the judgment, it is unnecessary to discuss any of the other assignments of error.

The cross-appeal involves but one question. In making returns for the gas defendants deducted the amount of the Louisiana severance tax on the royalty. Plaintiff sued to recover the amount deducted, $1,726.41. The District Court ruled that the tax was properly deducted. Plaintiffs assign error thereto. The ruling was correct. Sartor v. United Carbon Co. (La. Sup.) 163 So. 103, decided June 19, 1935. Plaintiffs take nothing on the cross-appeal.

Reversed and remanded on appeal. Affirmed on cross-appeal.

BRYAN, Circuit Judge, participated in the hearing and decision of this cause, but died before the opinion was prepared and filed.