### MULLINS et al. v. DE SOTO BANK & TRUST CO. et al.

### No. 11304.

Circuit Court of Appeals, Fifth Circuit.

June 14, 1945.

Aubrey M. Pyburn, of Shreveport, La., for appellants.

Clyde R. Brown, of Monroe, La., and Lamar E. Colvin, of Mansfield, La., for appellees.

Before SIBLEY, HUTCHESON, and WALLER, Circuit Judges.

HUTCHESON, Circuit Judge.

When appellants were here before,[1] we affirmed the judgment as to Federal Deposit Insurance Corporation, individually. Holding that, on a motion to dismiss "because the complaint fails to state a claim for which relief can be granted", "all that was before the district judge on the motion to dismiss was the case as plaintiff's petition had alleged it", and that the judge had therefore erred in considering answers

---

[1] Mullins v. DeSoto Securities Co., Inc., et al., 5 Cir., 136 F.2d 55.

to interrogatories propounded to plaintiff, we reversed the judgment as to the other defendants, the DeSoto Corporation and Federal Deposit Insurance Corporation, as Receiver for DeSoto Bank & Trust Company.

After remand of the cause, plaintiff's complaint was amended to make it more definite in certain particulars and to abandon claims for overcharges for rents, auditors' and attorneys' fees, and for damages growing out of the R. F. C. loan transaction. This left in the petition a claim for damages inflicted through use of the Securities Company by the Bank of Commerce, predecessor of the defendant, DeSoto Bank, and vague and general claims that the DeSoto Bank had, between the time the Bank of Commerce went into liquidation in 1933, and the DeSoto Bank, its successor, went into liquidation in 1936, misused its position as sole owner of the common stock of the Securities Company. Federal Deposit Insurance Corporation, as Receiver, and the DeSoto Corporation filed answers denying the allegations of the petition, and Federal Deposit Insurance Corporation, as Receiver, moved for summary judgment. In support of this motion it alleged and proved that, under Section 4 of Act 300 of 1910 of the Legislature of Louisiana,[2] the Federal Deposit Insurance Corporation, as Receiver of the defendant, DeSoto Bank & Trust Company, had issued the notice required by the Act for legal proof of claims to be made not later than March 15, 1937; that plaintiff and intervenors had never, as required by the Act, filed the claims on which they sued; and that until May 26, 1939, when plaintiff, by letter of its attorney, demanded that the Securities Company sue for the alleged wrongs to it, defendant did not know, and never had heard, that any such claim was being made. Not at all disputing the truth of the facts alleged in the motion for summary judgment, plaintiff and intervenors,

to avoid their effect, filed affidavits affirming that until the time of writing the letter in May, 1939, demanding that the Securities Company bring suit, they did not know and had had no notice of the acts for which they sued.

The district judge, on the authority of In Re Interstate Trust & Banking Co., 188 La. 211, 176 So. 1, ruled that the invoked act covered all claims against a banking corporation in liquidation, including claims derivatively presented, as those in this suit are, and that failure to file claim within the time fixed in the notice, and to sue within six months after rejection was a complete bar.

From the judgment on the motion dismissing the demands of plaintiff and intervenors as against the DeSoto Bank and Trust Company in receivership but without prejudice to their suit against the defendant, the DeSoto Corporation, plaintiff and intervenors have appealed. Here they assert that the invoked act does not apply to the claims in suit because (1) they are asserted not directly by the corporation but derivatively by preferred stockholders; (2) if the claims are within the statute, the maxim "Contra non valentem agere nulla currit praescriptio", ought to be applied here because they made a sufficient showing that they did not, and could not, know of the existence of the claim until long after the time fixed in the notice for filing claims; and (3) if the act is applicable to part of their claims, it is not applicable to the $16,225 claimed indebtedness from Securities to the Bank of Commerce which was paid to the receiver after the notice had begun to run, and that the claim, at least for this amount, is a claim arising after the notice.

We think the district judge was right throughout. The invoked act contains no exception of, no qualifications as to, kinds of claims, or by whom pressed

---

[2] "Section 4. Be it further enacted, etc., That as soon as practicable after taking such possession of a corporation the State Examiner of State Banks shall cause to be published a notice to appear at least once per week for three months in such newspaper as he may select. This notice shall call upon all persons, other than depositors, who may have claims against the corporation to file the same with the State Examiner of State Banks and make legal proof as to the justice thereof, at a place and within a time not earlier than the last day of publication of such notice to be specified therein. If the said Examiner shall doubt the justice or validity of any such claim so filed, he may reject the same and serve notice of such rejection upon the claimant either by mail or personally. An affidavit of such notice shall be filed in the office of the State Examiner of State Banks and shall be prima facie evidence of such service. An action upon such claim may be brought only within six months after the date of such service."

or presented. Enacted for the protection of depositors to secure prompt payment to them by early and expeditious settlement and liquidation of the affairs of failed banks, the courts of Louisiana[3] have given it a meaning and effect calculated to attain just these ends. Neither the fact that the claim put forward here is one for mismanagement of one corporation by another owning or controlling all its common stock, nor the fact that the claim is pressed not directly by the corporation, but derivatively by preferred stockholders, is significant. The controlling fact under the statute is that the claim in question is a claim against a bank in liquidation, the presentation and settlement of which necessarily affects the amounts to be paid to the depositors and the time when, and conditions under which, such payments will be made. Unless, therefore, the record makes such a showing as would justify the holding that, without negligence or fault on claimant's part, the existence of their claims was not, and could not have been, known to them, and that, therefore, prescription has not been running, the district judge was right in holding that suit on the claims was barred.

Appellee, as a first reply to appellants' claim that such a showing has been made, insists that the statute in question is not one of prescription but of peremption, that is one fixing a condition precedent to suit,[?] and that the invoked maxim applies only to statutes of limitation, those which by lapse of time cut off the right to sue.

We do not agree with this view. No Louisiana case has been cited to us in which the statute in question has been declared to be a statute of peremption. All of the cases cited to us which have dealt with the statute have treated it as prescriptive.[4] In the Wren case it was specifically denominated a statute of prescription. It is true that the bar set up in the Wren case was based not upon a failure to file the claim within the statutory period, but upon the failure to bring the suit within six months after rejection, and that failure to bring the suit was excused

not because of the minority of the claimant or because of any other application of the maxim, "Contra non valentem", but because the claim had not in fact been rejected and the six months' period for suing had not commenced to run. Texas has substantially the same statute, and it is determined there [5] that it is a statute of limitations, that is a prescriptive, not a peremptive, statute. In 34 Am.Jur., at page 16, under Section 7, "Qualifications Annexed to Right of Action", may be found a clear statement of the nature and effect of a peremptive statute, as well as citations showing that statutes requiring notice of claims "variously have been held to impose conditions upon the existence of a right of action, to impose conditions upon the jurisdiction of the court, or to constitute statutes of limitation merely affecting the remedy". Pointing out that a statute of limitations must be differentiated from a statute fixing conditions which are annexed to a right of action created by statute, the text makes it clear that a peremptive statute is not one which merely by lapse of time cuts off an existing right to sue. Normally it is one which creates the right and prescribes the conditions under which it may be sued. Typical cases of this kind are those where the time prescribed for the commencement of the action is a part of the statute creating the action, and, therefore, a condition imposed upon the exercise of the statutory right. Louisiana, like other states, has statutes of this kind. Guillory v. Avoyelles, 104 La. 11, 28 So. 899, is typical of such cases. Sec. 4 of Act 300 of 1910 does not create rights of action or claims, it fixes a short limitation on the assertion and enforcement of rights already existing independently of the statute. As is shown by the discussion of it in the Interstate Trust & Banking Co. case, the statute in question here, like similar provisions in the National Bankruptcy Act and in the statutes of other states, providing for the barring of claims against estates in liquidation in a shorter time than that prescribed in general statutes of limitation, was enacted for the purpose of shortening the period of limitation as to

---

[3] Cf. In re Interstate Bank & Trust Co., 188 La. 211, 176 So. 1.

[4] Interstate Bank & Trust Co., 188 La. 211, 176 So. 1; Wren v. Brock, La.App., 8 So.2d 763.

[5] Brand v. Lindale Canning Co., Tex. Civ.App., 85 S.W.2d 323; State Banking Board v. Pilcher, Tex.Com.App., 270 S. W. 1004; Balfour Co. v. Gossett, 131 Tex. 348, 115 S.W.2d 594; Gossett v. Green, 137 Tex. 50, 152 S.W.2d 733.

such claims so as to speed up their presentation and the filing of suits thereon.

As a second reply to appellants' claim that the time prescribed by statute has not run, appellee, pointing out that the Louisiana Civil Code makes no provision for exceptions to the running of prescription[6] in favor of a person who is ignorant of the existence of his rights and that if the course of prescription is to be suspended here, appellants must make a showing, that the debtor has actually concealed the fact of the obligation or has committed other acts which tend to hinder, impede, or prevent the creditor from ascertaining it, insists that no such showing has been made.

We agree. If appellants have a claim, it accrued to them many years before the DeSoto Bank was placed in liquidation. Whatever might be said as to the excuse for the long delay in asserting the claim, if the claim was one for acts committed by the DeSoto Bank after, in 1933, it took over the assets and assumed the liabilities of the Bank of Commerce, and we think there would not have been too much to say, the fact is that the liability, if any, of the DeSoto Bank is only derivative through its purchase and assumption of the liabilities and assets of the Bank of Commerce. The wrong doing alleged is that of the Bank of Commerce. Thus the delay in moving to ascertain and redress the supposed wrongs done to the Securities Company not only compasses a term of nearly ten years from the time when, in 1929, 1930 and 1931, the mishandling by the Bank of Commerce was alleged to have occurred, to 1939, when it is claimed the wrongs were first discovered, but the official liquidation in 1933 of the Bank of Commerce and the sale of its assets to DeSoto.

To hold that appellants during this long period of time and under these circumstances should be held excused from ascertaining the existence of and pressing their claims against the Bank of Commerce, and its assignee, would be not only contrary to the principle of repose on which general statutes of limitation are founded, but a flying in the face and a defeat of the wholesome purpose of Section 4 of Act 300 of 1910 to bring about prompt and speedy liquidation of insolvent banks with prompt payment of depositors.

Finally, there is no substance in appellants' third point that as to the $16,225 paid on the obligation of Securities to the receiver of the DeSoto Bank after that bank had gone into liquidation, the wrong occurred not before but after the liquidation notice. The wrong complained of as charged in the petition was the practice of using the Securities Company as a dumping ground for semi-worthless notes and other assets by making transfers of such notes and assets to it. The issuance and existence of the obligation in question was not one of these wrongs. Indeed, it is not claimed that there was anything wrong with it except that instead of being collected it ought to have been offset against the indebtedness claimed against the banks because of their wrongdoing. The receiver of the DeSoto Bank certainly committed no wrong in collecting the obligation. On its face and in fact the obligation was valid, and it was the duty of the receiver to collect it. The judgment was right. It is affirmed.

---

[6] Judge McCaleb, in Cruze v. Life Ins. Co. of Virginia, La.App., 184 So. 735 at 737, has thus summarized the law of Louisiana:

"Under the applicable articles of the Civil Code, namely, 3521 to 3527, inclusive, which treat of the causes suspending the course of prescription, no exemptions are granted in favor of a creditor who is ignorant of the existence of his right. * * * *"

"It would seem that a literal interpretation of the language of the Code precludes a consideration of the doctrine 'contra non valentem' in this state. Be this as it may, the Supreme Court has many times recognized the underlying justice of the doctrine and has applied it on many occasions. The leading authority on this subject is the case of Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598, where the Court discussed this question in detail and concluded that the doctrine may be invoked in this state, as a cause for suspending the course of prescription, in cases where the debtor has concealed the fact of the obligation or has committed other acts which tend to hinder, impede or prevent the creditor from ascertaining knowledge of the existence of the debt."