## COLLEY v. CANAL BANK & TRUST CO.
### et al. (two cases).
### Nos. 562, 563.

District Court, E. D. Louisiana,
New Orleans Division.

March 7, 1946.

Chaffe, McCall, Bruns, Toler & Phillips and Harry McCall, Sr., all of New Orleans, La., for plaintiff.

Dufour, St. Paul & Levy, William C. Dufour, Walter M. Barnett and Henry & Kelleher, Harry B. Kelleher, Rosen, Kammer, Wolff, Hopkins & Burke and Alfred C. Kammer, all of New Orleans, La., for defendants.

BORAH, District Judge.

These consolidated actions involve common questions of law and fact, and accordingly may be disposed of in one opinion.

In each original complaint, the plaintiff alleges that on February 13, 1930, when she was a minor, the Canal Bank & Trust Company and H. & B. Beer, a partnership, converted to their own use four certificates for 100 shares each of the capital stock of the Louisville & Nashville Railroad Company, and wrongfully sold the stock for $54,800. Each plaintiff seeks to recover that amount.

In a supplemental complaint filed in each suit, the original complaint was adopted in toto and there were added in considerable detail the history of each plaintiff's acquisition of the four stock certificates and a recital of the manner in which the alleged conversion was accomplished.

The uncontroverted facts, most of which have been stipulated, are these:

### Findings of Fact

1. The plaintiff, Annette Folmar Colley, a citizen of the State of Alabama and wife of Dr. James O. Colley, Jr., was born on October 7, 1918. She was married on March 2, 1937, when more than eighteen years of age, and, under the applicable Ala—

bama statute, after marriage, she had "the same legal rights and abilities as married women over twenty-one years of age".

2. On September 20, 1941, the said plaintiff was, by the Probate Court of Pike County, Ala., duly appointed guardian of her sister, Mary Folmar, a minor, who is also a citizen of Alabama. By order of court entered in the same proceeding on July 27, 1942, it was provided that Mary Folmar should be vested with all the rights and abilities possessed by a person having attained the age of twenty-one years.

3. Each of the defendants is a citizen of the State of Louisiana, and is domiciled in the Parish of Orleans, within the jurisdiction of this Court.

4. The Canal Bank & Trust Company, hereinafter called the Bank, was, in 1930, a banking corporation doing business in the city of New Orleans. In May, 1933, J. S. Brock, State Bank Commissioner of Louisiana, took lawful possession of the Bank and appointed Harry G. Thompson as his special agent in its liquidation, which appointment was confirmed on May, 20, 1933, in an order of the Civil District Court for the Parish of Orleans, which order also confirmed John F. Finke as liquidator of the Bank. Thompson and Finke are still acting in their respective capacities, but Brock has been succeeded as bank commissioner by Wilfred J. Begnaud.

5. H. & B. Beer, hereinafter referred to as Beer, was, in February, 1930, a commercial partnership doing a stock brokerage business in New Orleans, La. Among the partners at that time were J. William Barkdull, Roy E. Barkdull and C. Morgan Abrams. Henry Beer was on October 12, 1929, at the time of his death a partner "in commendam" in said firm, and his estate and/or his liquidators continued as a partner in the firm until it was liquidated on or before April 30, 1930.

6. Proceedings in the Succession of Henry Beer were filed on October 30, 1929. At the time of his death, Mr. Beer's capital interest in the firm was inventoried and appraised at $85,000. Suzanne Schaefer, one of the defendants herein, a feme sole of full age of majority, was a residuary legatee to the extent of two-thirty-seconds (2/32) of Mr. Beer's estate, and was recognized as such and sent into possession by a judgment dated June 13, 1930.

7. C. Morgan Abrams died April 15, 1940, leaving as his widow the defendant Justine Haas, and as his sole heir his daughter, the defendant Lillie Abrams, wife of Albert Lieutaud, who were recognized as such and sent into possession by a judgment dated October 12, 1940. The entire community estate amounted to $8,313.43.

8. J. C. Henderson, a resident of Troy, Pike County, Ala., died shortly prior to May 20, 1929, leaving a solvent estate. By his last will and testament he bequeathed 400 shares of the capital stock of the Louisville & Nashville Railroad Company to each of his two granddaughters, the plaintiffs herein. Under his will, probated on May 20, 1929, in Pike County, Ala., E. M. Wright and Emory Folmar were appointed executors, and they qualified as such.

9. Emory Folmar is the father of the plaintiffs, but was never at any time appointed nor did he qualify as their guardian.

10. On or about October 11, 1929, the Louisville & Nashville Railroad Company issued four certificates, each for 100 shares of its capital stock, to each of the plaintiffs.

11. On or about February 10, 1930, Arthur Folmar and F. H. Perry delivered the eight certificates referred to in the preceding paragraph to the bank for sale for the account of W. B. Folmar & Sons, bankers of Troy, Ala.

12. On the reverse side of each certificate there appeared what purported to be the signature of Mary Folmar or Annette Folmar, as assignor of the stock. These signatures, however, were not written by the plaintiffs, or by either of them, but by their father, Emory Folmar.

13. On or about February 10, 1930, the Bank entered orders with Beer, as broker, for the sale of the 800 shares, and the said broker immediately executed the orders on the floor of the New York Stock Exchange.

14. Pursuant to its orders for the sale of the stock, the Bank delivered the eight certificates to Beer, after having placed its signature guarantee on the reverse of each certificate.

15. The sales of the 800 shares of stock by Beer for the account of the Bank were made at the price of $137 per share, which was its fair and reasonable market value.

16. The account of the Bank was credited on the books of Beer with the net proceeds of said sales, on February 11, 1930, in the sum of $27,342, and on February 13, 1930, in the sum of $82,026 and said amounts were paid by Beer to the Bank. The small difference between the actual amount of

the sales and the amount credited represented commissions and taxes.

17. Immediately thereafter, the certificates were transmitted by Beer to its New York branch in order to discharge the obligation to deliver the shares of stock previously sold. On instructions of W. B. Folmar & Sons, the Bank on February 11, 1930, credited $27,342 to the Folmar firm, and on the following day credited $72,658 to the same firm and $9,368 to Emory Folmar.

18. The certificates, bearing the signature guarantees of the Bank and Beer, were presented to the transfer agent of the Louisville & Nashville Railroad in New York City, for cancellation and transfer. The certificates were canceled, and new certificates were issued and delivered to persons other than the plaintiffs.

19. In June, 1941, there were served on the Louisville & Nashville Railroad in Birmingham, Ala., a summons and a complaint in the suit which Mary Folmar by her next friend, James O. Colley, Jr., had filed against the company in a Circuit Court of Alabama, seeking $200,000 damages on the ground that the railroad company had converted 400 shares of its stock belonging to said Mary Folmar; and there were also served on the railroad a summons and a complaint in the suit which Annette Folmar Colley had filed in the United States District Court for the Western District of Kentucky seeking a recovery of $54,400, with interest, on the ground that the company had converted 400 shares of its stock belonging to said Annette Folmar Colley.

20. On September 23, 1941, the Louisville & Nashville Railroad entered into separate written contracts with each of the plaintiffs, providing in substance as follows: (1) That the plaintiffs authorized the company to institute suits in their names "against such persons or parties as counsel for the Company may advise are legally liable to" the respective plaintiffs in connection with the alleged conversion of the plaintiffs' stock; (2) that the company agreed to lend to each of the plaintiffs sums not exceeding $20,000, and, in addition, to deposit with the First National Bank of Birmingham a sum equal to the difference between $48,000 and whatever amount the company might lend to the respective plaintiffs; (3) that the plaintiffs assigned to the company all sums that might be recovered from their respective claims against "all such other parties as may have arisen

out of the transfer of said certificates," etc., such sums were to be applied by the company first against the maximum of $20,000 to be lent to each of the respective plaintiffs, then used to pay plaintiffs the amount on deposit, and the balance over and above $48,000, less "reasonable costs and expenses", to be turned over to the respective plaintiffs. Under each agreement, the company advanced $20,000 to each respective plaintiff and likewise under each agreement deposited $28,000 in the Birmingham bank.

21. Several times during the year 1933 there were published advertisements in New Orleans newspapers, notifying all persons other than depositors having claims against the Bank, that the Bank had been closed; that the state bank commissioner had taken possession under the provisions of the laws of Louisiana; and that claimants should file and prove their claims on or before September 15, 1933, before said commissioner.

22. Notwithstanding the publication of the notices referred to above, no claim of any nature was ever filed prior to May 14, 1941, against the Bank on behalf of either of the plaintiffs.

23. Neither plaintiff was aware of her ownership of the said stock until the early part of the year 1941. The present suits were filed on November 29, 1941.

24. Neither Beer nor any defendant herein has been guilty of any fraud or concealment that has contributed to the want of knowledge on the part of plaintiffs.

### Discussion

The defendants in this consolidated action have asserted in their answers more than a score of separate defenses. Some of these defenses were heard and determined before trial and of those which remain for determination some are common to all defendants and others relate to one or more of them. All have pleaded the prescription of one year and this plea will now be considered in the light of the stipulated and uncontroverted facts.

Article 3536 of the Civil Code provides that actions for damages, resulting from offenses and quasi offenses, are prescribed by one year. The next article, before it was amended by Act 33 of 1902, read as follows: "The prescription mentioned in the preceding article runs: With respect to the merchandise injured or not delivered, from the day of the arrival of the vessel, or

that on which she ought to have arrived. And in the other cases from that on which the injurious words, disturbance or damage were sustained."

The act of 1902 added this provision: "And where land, timber or property has been injured, cut, damaged or destroyed from the date knowledge of such damage is received by the owner thereof."

Plaintiffs concede, as the pleadings indubitably show, that these actions are for damages resulting from a tort or quasi offense, and admit the applicability of these codal articles, but, placing reliance on the last paragraph of article 3537, maintain that the prescription mentioned in the preceding article runs not from February, 1930, when damages were sustained in consequence of the conversion, but from January, 1941, when plaintiffs received knowledge of the damage.

The argument is not persuasive. It finds support neither in reason nor in authority. But there is no need to labor the point, for the courts have construed article 3537 adversely to plaintiffs' contention. In McCaleb v. Fox Film Corporation, 5 Cir., 299 F. 48, 51, the court held that article 3536 providing a one-year limitation for quasi offenses was applicable to actions for infringements of copyrights, infringement being a quasi offense or tort; and that this article had the effect of barring the copyright proprietor's claim to damages from the infringer, more than two years having elapsed after the commission of the tort before the bringing of the suit, unless a different result was required by the addition made in 1902 to article 3537. In considering the effect of this added language, as quoted above, the court said:

"The effect of the added provision was to create an exception to the provision making the prescription run from the day on which damage was sustained. The exception embraces nothing but claims arising 'where land, timber or property has been injured, cut, damaged or destroyed.' Under the familiar ejusdem generis rule of construction the word 'property,' following the words 'land' and 'timber,' is to be understood as referring only to things of the same general nature or class as those enumerated, to things like land or timber. It is to be supposed that, if the Legislature had intended the use of the word 'property' to be in the broad and unrestricted sense in which that word property may be used, it would have made no mention of land or timber, and would have used some such language as the following:

"'And where property has been injured or destroyed, from the date knowledge of such damage is received by the owner thereof.'

"We are of opinion that the word 'property,' in the connection in which it is found in the last above set out provision, does not include anything as unlike land and timber as the intangible interest which a copyright confers on its proprietor. Alabama v. Montague, 117 U.S. 602, 6 S.Ct. 911, 29 L.Ed. 1000; Gleason v. Thaw, 3 Cir., 185 F. 345, 107 C.C.A. 463, 34 L.R.A.,N.S., 894; 36 Cyc. 1119.

"'Where the words of a law are dubious, their meaning may be sought by examining the context with which the ambiguous words, phrases and sentences may be compared in order to ascertain their true meaning.' Revised Civil Code of La. art. 16.

"An infringement of a copyright is not likely to have been in the minds of lawmakers when they were dealing specifically with land and timber depredations. We are of opinion that the asserted claim to damages for infringement of the copyright is not enforceable, as it was barred or prescribed before the suit was brought."

■ Paraphrasing this language, I may say that this court is of opinion that the word "property" in the connection in which it is found in the added provision does not include anything as unlike land and timber as certificates of stock. A conversion of stock certificates is not likely to have been in the minds of law makers when they were dealing specifically with land and timber depredations.

In Citizens' Bank v. Jeansonne, 120 La. 393, 398, 399, 45 So. 367, 369, a case involving the application of this same Act 33 of 1902, now invoked by the plaintiffs, the defendant was sued as a trespasser for damages for timber cut and removed, and pleaded the prescription of one year. In reaching the conclusion that the burden was on plaintiffs to prove the date that knowledge of the alleged trespass was brought home to him, the court made the following observations: "Prior to the adoption of Act No. 33, p. 41, of 1902, actions for damages for trespass upon lands by cutting and removing timber were prescribed by one year from the date of the trespass. Shields v. Whitlock & Brown,

110 La. 714, 34 So. 747; Gilmore v. Schenck, 115 La. 386, 39 So. 40. By the Act No. 33, p. 41, of 1902, it was provided that the prescription of one year runs 'where land, timber or property has been injured, cut, damaged or destroyed, from the date knowledge of such damage is received by the owner thereof.' "

Having thus stated in effect that Act 33 of 1902 set forth an exception to the general rule, the court pointed out wherein plaintiff failed to carry the burden of showing when the corporation first received knowledge of the cutting of the timber, and said:

"In the case at bar the plaintiff relies on an exception to the general rule that actions for damages resulting from offenses (torts) are prescribed by one year from the day the damage was sustained. Merrick's Rev.Civ.Code, arts. 3536, 3537.

"It has been held that a plaintiff who claims an exemption (such as nonresidence) from the general rules of prescription must prove the fact. Hubnall v. Watt, 11 La.Ann. 57. We think that this doctrine is applicable to the case at bar where the plaintiff claims the benefit of the exception provided by Act No. 33, p. 41, of 1902, in favor of a particular class of persons, to wit, owners of land ignorant of trespass committed on their property."

This decision makes it plain that it is the general rule of prescription that all actions for damages for offenses and quasi offenses are prescribed by one year from the day the damage was sustained and that plaintiffs cannot claim the benefit of the exception provided by Act 33 of 1902 because this exception runs only in favor of "owners of land ignorant of trespass committed on their property."

It is alleged and proved that the defendants performed certain definite acts resulting in the conversion of the stock owned by the plaintiffs and the certificates representing such stock. It was therefore a wrong, an offense. It was the taking and appropriating of plaintiffs' property without their consent that caused them damage to the amount of the value of their stock, and this amount, together with interest thereon from the date of the conversion, is claimed in these suits. And as the evidence shows that the acts complained of were committed in February of 1930, more than one year prior to the institution of this suit, the prescription pleaded is ap-

plicable and must be sustained, unless plaintiffs have alleged and proved facts sufficient to show a suspension or interruption of prescription so as to bring the action within the prescriptive period. Kennard v. Yazoo & M. V. R. Co., La.App., 190 So. 188.

◼ The present actions were filed on November 29, 1941. The allegation in each petition is that "plaintiff learned of said conversion only within the past few months and well within the past year". And the facts proved are that the plaintiffs did not know and had no reason to know prior to January, 1941, of the loss which they had sustained. These are the facts and the only facts upon which the plaintiffs rely to show a suspension or interruption of prescription.

◼ The prescription liberandi causa of one year provided by article 3536 runs against minors and persons residing out of the state. Civil Code, art. 3541. Article 3521 of the Code provides that, "prescription runs against all persons, unless they are included in some exception established by law." There is no such exception in the written law in plaintiffs' favor.

Counsel for plaintiffs base their argument for the interruption of prescription not on the language of the Code but on the maxim "Contra non valentem agere non currit prescriptio." It is argued that the Louisiana Supreme Court, in decisions in which it was absolutely necessary to pass on the particular point, has laid down the rule that where one is ignorant of his rights the statute of limitations does not begin to run until he has or should have knowledge of those rights. Plaintiffs' counsel admit that there are cases in which there is language to the effect that mere ignorance of one's rights does not toll the statute unless such ignorance is due to concealment on the part of the debtor, but it is claimed that those decisions dealt with situations in which there was concealment and that it was, therefore, unnecessary to pass upon the applicability vel non of the "Contra non valentem" doctrine in cases of good faith and ignorance unaccompanied by active concealment on the part of the debtor. The further argument is made that there was, as a matter of fact, at least passive concealment in the present cases. The following cases are cited in support of these contentions: Mestier v. New Orleans, Opelousas & Great Western

R. Co., 16 La.Ann. 354; M. L. Byrne & Co. v. Their Creditors, 33 La.Ann. 198; Boagni v. Wartell, 50 La.Ann. 128, 23 So. 206; Louisiana Oil Refining Corporation v. Gandy, 168 La. 37, 121 So. 183; McGuire v. Monroe Scrap Material Co., 189 La. 573, 180 So. 413; Gautreaux v. Harang, 190 La. 1060, 183 So. 349; Succession of Dancie, 191 La. 518, 186 So. 14; Walter v. Caffall, 192 La. 447, 188 So. 137.

I do not believe that there is any merit in either of these contentions. An examination of the rulings in the above cases will show that they fall short of sustaining the view in support of which they are cited. No useful purpose could be served in analyzing them.

■ The decisions both State and Federal show the inapplicability of the maxim which plaintiffs have invoked in avoidance of defendants' plea of prescription. Reynolds v. Batson, 11 La.Ann. 729; Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175; Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598; Littlefield v. City of Shreveport, 148 La. 693, 87 So. 714; Smith v. Tyson, 193 La. 571, 192 So. 61; Succession of Kretzer, La.App., 170 So. 906; Freiman v. Parish of Lafayette, La. App., 177 So. 377; Cruze v. Life Insurance Co. of Virginia, La.App., 184 So. 735; Pope v. Employers Liability Assur. Corporation, La.App., 14 So.2d 105; Arkansas Natural Gas Co. v. Sartor, 5 Cir., 78 F.2d 924; Buchanan v. Pitts, 5 Cir., 111 F.2d 599; Mullins v. DeSoto Bank & Trust Co., 5 Cir., 149 F.2d 864.

In the most recent case of Smith v. Tyson, 193 La. 571, 192 So. 61, 62, the Supreme Court of Louisiana determined the classes of cases in which it was proper to apply the maxim "Contra non valentem agere non currit prescriptio". In that case, as here, there was not the slightest suggestion of fraud or concealment or that plaintiff's inability to act was brought about by the ill practices of the defendants, but plaintiff rested her case for the suspension of prescription solely upon her nonresidence and ignorance of her property rights. The court, however, rejected plaintiff's contentions and affirmed the judgment which maintained the plea of prescription of thirty years. That decision is so apposite to defendants' contentions and to the facts in the cases at bar as to warrant the following extended quotation therefrom:

"In Reynolds v. Batson, 11 La.Ann. 729, 730, relied upon by plaintiffs, the Court held that the maxim 'contra non valentem agere non currit prescriptio' had been applied to prescription liberandi causa in three classes of cases, namely:

"'1st. Where there was some cause which prevented the courts or their officers from acting or taking cognizance of the plaintiff's action; a class of cases recognized by the Roman law as proper for the allowance of the utile tempus. (Authorities cited.)

"'2d. The second class of cases are those where there was some condition or matter coupled with the contract or connected with the proceeding which prevented the creditor from suing or acting. (Cases cited.)

"'3d. The third class of cases is where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action. (Cases cited.)

"In Reynolds v. Batson, supra, the Court said further 11 La.Ann. [729] at pages 730 and 731: 'Cases may arise to which it may be proper to apply the maxim, but we do not think the present a case of this kind. * * *

"The stipulation of facts in the case fails to show that plaintiff comes within any one of the three classes of cases mentioned in Reynolds v. Batson, supra, to which the prescription liberandi causa applies.

"1st. There is no cause shown which prevented our courts from acting or taking cognizance of plaintiff's action.

"2d. There is no condition or matter coupled with the contract or connected with the proceeding shown, which prevented plaintiff from suing or acting.

"3d. Nor was any act done by any of the defendants shown, effectually to prevent plaintiff from availing herself of her cause of action.

"It is certain that plaintiff's case is not embraced within any one of the three classes of cases enumerated in Reynolds v. Batson as causes suspending the prescription liberandi causa.

"The mere statement in the opinion in that case that 'Cases may arise to which it may be proper to apply the maxim,' without stating the nature of any such case or cases, does not assuredly constitute that

decision authority for the contention of plaintiff that mere non-residence and ignorance of her property rights constitute sufficient causes for the suspension of the prescription liberandi causa.

"Had the decision in the Batson case so held, it would have been against the great weight of authority to the contrary.

"In Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175, the plaintiffs were non-residents of the State of Louisiana and ignorant of their rights. The Court said, 105 La. at page 562, 30 So. at page 183: 'The deeds were of record. The failure to attack them in time is not due to any act of these heirs, but to the facts, as we take it, that plaintiffs were not aware of their rights under the laws of Louisiana, which are different, as relates to inheritance, from those of the state in which the estate was domiciled, and in which plaintiffs reside.'

"A review of the jurisprudence on the maxim, 'contra non valentem, agere non currit prescriptio,' appears in Hyman v. Hibernia Bank & Trust Co. et al., 139 La. 411, 71 So. 598, 602, and the Court extended the doctrine to apply to a case where the inability of plaintiff to act was brought about by the ill practices of the defendants, as otherwise the defendants would have benefited by their own wrong, a thing inadmissible in law.

"Plaintiff, however, in the instant case, makes no contention that her inability to act was brought about by the ill practices of the defendants, but rests her case solely upon her non-residence for many years and ignorance of her property rights.

"The United States Circuit Court of Appeals for the Fifth Circuit had occasion to consider the maxim, 'contra non valentem, agere non currit prescriptio,' in Arkansas Natural Gas Co. v. Sartor et al., 78 F.2d 924, and at pages 928, 929, said: '* * * Under the law of Louisiana prescription does not run against one who is ignorant of his rights, provided the party pleading it has been guilty of fraud that contributes to the want of knowledge on the part of plaintiff. Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598. But in the absence of fraud, prescription runs against all persons, unless exempted by some provision of the statute. Plaintiffs are not protected by any statutory exemption. In Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175, it was said that those who claim exemption from prescription by reason of ignorance resulting from fraud must allege and show that such ignorance was neither willful nor negligent; and again, in Littlefield v. City of Shreveport, 148 La. 693, 87 So. 714, it was said that mere passivity cannot arrest the course of prescription, good faith not being required on the part of the person pleading prescription. La.Civil Code, art. 3550.

" 'The above-cited decisions of the Supreme Court of Louisiana are in line with the general jurisprudence of the country. Statutes of limitation are founded on public policy and are favored in the law. Mere ignorance of one's rights will not toll the statute of limitations. Concealment by defendant only by silence is not enough. He must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry. There must be reasonable diligence on the part of plaintiff and the means of knowledge are the same in effect as knowledge itself. (Cases cited.) We know of no decision, either of controlling authority or persuasive, holding that mere ignorance on the part of the creditor will toll the statute.' * * *

"In Littlefield v. City of Shreveport, 148 La. 693, 698, 87 So. 714, 716, the Supreme Court, speaking of the case of Hyman v. Hibernia Bank & Trust Company, supra, said: 'That decision makes a clear distinction between the activity, or machinations, of a debtor for lulling his creditor into a false security, and his mere passivity. Mere passivity cannot arrest the course of prescription. "Good faith not being required on the part of the person pleading this prescription," etc. C.C. art. 3550.' "

"Nor can the mere passivity of the defendants in this case arrest the course of prescription, in the total absence of allegation or proof of machinations upon their part lulling plaintiff into a false security."[1]

In Cruze v. Life Ins. Co. of Virginia, La.App., 184 So. 735, 737, 738, the Court of Appeal for the Parish of Orleans said:

"Under the applicable articles of the Civil Code, namely, 3521 to 3527 inclusive, which treat of the causes suspending the course of prescription, no exemptions are granted in favor of a creditor who is ignorant of the existence of his right. * * *

---

[1] Italics used throughout this opinion are supplied.

"It would seem that a literal interpretation of the language of the Code precludes a consideration of the doctrine 'contra non valentem' in this state. Be this as it may, the Supreme Court has many times recognized the underlying justice of the doctrine and has applied it on many occasions. The leading authority on this subject is the case of Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598, where the Court discussed this question in detail and concluded that the doctrine may be invoked in this state, as a cause for suspending the course of prescription, *in cases where the debtor has concealed the fact of the obligation or has committed other acts which tend to hinder, impede or prevent the creditor from ascertaining knowledge of the existence of the debt.* See, also, Reardon et al. v. Dickinson et al., 156 La. 556, 100 So. 715; Bernstein v. Commercial Nat. Bank, 161 La. 38, 108 So. 117; Littlefield v. City of Shreveport, 148 La. 693, 694, 87 So. 714, 716; Arkansas Natural Gas Co. v. Sartor, 5 Cir., 78 F.2d 924, 928; and Succession of Kretzer, La.App., 170 So. 906, reversed on other grounds by the Supreme Court in 187 La. 247, 174 So. 345."

Similar views were expressed by the same court in the more recent case of Pope v. Employers Liability Assur. Corporation, La.App., 14 So.2d 105, 109, and by the Louisiana Court of Appeal for the First Circuit in Freiman v. Parish of Lafayette, La.App., 177 So. 377, 378, 379.

In Mullins v. DeSoto Bank & Trust Co., 149 F.2d 864, 868, the Circuit Court of Appeals for the Fifth Circuit accepted Judge McCaleb's summary of the law of Louisiana as quoted supra in the Cruze case, and said:

"As a second reply to appellants' claim that the time prescribed by statute has not run, appellee, pointing out that the Louisiana Civil Code makes no provision for exceptions to the running of prescription in favor of a person who is ignorant of the existence of his rights and that if the course of prescription is to be suspended here, appellants must make a showing, that the debtor has actually concealed the fact of the obligation or has committed other acts which tend to hinder, impede, or prevent the creditor from ascertaining it, insists that no such showing has been made.

"We agree."

Conclusions of Law

■ This is not a proper case for the application of the doctrine "Contra non valentem". The mere fact that plaintiffs were ignorant of the existence of their rights does not toll the statute in the total absence of allegation and proof that the defendants actually concealed the fact of the obligation or committed other acts which tended to hinder, prevent or impede the plaintiffs from ascertaining it. Nor does the mere passivity of the defendants arrest the course of prescription.

Plaintiffs' cause of action against the defendants for the conversion arose in February, 1930, the date of the conversion, for that was the date on which plaintiffs were damaged by the wrongful acts of the defendants. On that day prescription began to run against plaintiffs' claims. But the present actions were not filed until prescription had run, and plaintiffs have not discharged their burden of alleging and proving facts sufficient to show a suspension or an interruption of the running of prescription.

Under all the circumstances disclosed, and in accordance with the cases cited I am of opinion that the defendants' plea of prescription of one year is well founded and should be maintained, and that plaintiffs' actions should be dismissed with costs. The clerk is instructed to enter a judgment in each case accordingly.