538 P.2d 1150

C. F. SWAIN d/b/a Crest Oil Company, and
J. Fred Schlafly, as Trustee,
Appellants,

v.

SANTA FE PACIFIC RAILROAD COMPA-
NY, a corporation, Appellee.

No. I CA–CIV 2704.

Court of Appeals of Arizona,
Division 1,
Department B.

Aug. 14, 1975.

J. Fred Schlafly, Alton, Ill., and Robert P. Davidson, Scottsdale, for appellants.

Fennemore, Craig, von Ammon & Udall by Philip E. von Ammon, Phoenix, for appellee.

## OPINION

JACOBSON, Presiding Judge.

Does the price a seller of helium gas obtains from a buyer by reason of litigation establish a "market price" for that gas? This is the question presented in this appeal.

Appellee, Santa Fe Pacific Railroad Company (Santa Fe) brought an action against appellant C. F. Swain, d/b/a Crest Oil Company and J. Fred Schlafly (lessees), successors in interest to a helium gas lease wherein Santa Fe was lessor for royalties allegedly not paid in accordance with the terms of the lease. Summary judgment was granted to Santa Fe and the lessees have appealed.

The underlying facts giving rise to this litigation are as follows. Santa Fe is the owner of certain helium producing lands located in northeast Arizona. In 1959, Santa Fe leased a portion of this land to the predecessor in interest of the present lessees. In accordance with the terms of this lease, lessees agreed to pay to Santa Fe:

> "As royalty for gas from each well, where gas only is found, while the same is being sold or used off the premises *one-fourth (¼th) of the market price at the wells of the amount so sold· or used."* (emphasis added)

In December, 1974, the present lessees entered into separate but identical helium gas contracts with Kerr-McGee Industries, Inc. (Kerr-McGee) whereby Kerr-McGee agreed to purchase unrefined gas from lessees in accordance with price schedules set forth in the contracts. These contracts further provided:

> "Notwithstanding the foregoing, the amount to be paid for gas delivered hereunder shall never be less than ninety-five (95%) of the price paid by buyer to other sellers of helium-bearing gas from leases or lands in the same general area."

The parties have designated this provision as a "favored nation clause" and for ease of reference this opinion will likewise use this designation.

Pursuant to its contracts, Kerr-McGee was paying the lessees approximately 64¢ per thousand cubic feet of gas (MCF). In turn, lessees were paying Santa Fe one-fourth of this amount.

During the time relevant herein, Kerr-McGee was also the designated unit operator of a tract of helium-producing land known as the Pinta Dome field lying adjacent to the Santa Fe land, which was leased from the State of Arizona. The Kerr-McGee—State of Arizona lease required Kerr-McGee to pay the state a royalty based on 12½% of the "market value at the well" of all gas extracted. A dispute arose between the state and Kerr-McGee as to the amount of royalty due the state which resulted in Kerr-McGee filing a declaratory judgment against the state and others in Superior Court of Maricopa County. The trial court entered judgment from which both the state and Kerr-McGee appealed. While this matter was pending on appeal, the state and Kerr-McGee agreed to settle their differences and stipulated that the judgment of the trial court would be amended by deletion of the price schedule the trial court found and substituting an agreed upon price schedule. Pursuant to this stipulated price, Kerr-McGee was required to account to the state on the basis of a royalty of $1.76 per MCF of gas with helium content of 8.00% to 8.99% per volume.

As previously indicated, Kerr-McGee had been paying lessees only 64¢ per MCF for helium gas of the same quality. Following the price increase paid by Kerr-McGee to the state, lessees demanded an increase in the price paid by Kerr-McGee to them pursuant to the favored nation clause in their contract with Kerr-McGee. Kerr-McGee refused. Lessees subsequently brought suit against Kerr-McGee in the Federal District Court for the Southern District of Illinois. In that action, lessees prayed for judgment in an amount computed as the "difference between the price paid to plaintiffs for helium-bearing gas . . . produced under their contracts and the price paid by Kerr-McGee for helium-bearing gas purchased from other sellers of said gas."

Judgment was entered in lessees' favor in the amount prayed for. Kerr-McGee appealed and the judgment was affirmed by the 7th Circuit Court of Appeals except that it ordered that interest on the price increases would be calculated from November 5, 1968 rather than the date set by the trial court. *See Eastern Petroleum Company v. Kerr-McGee Corporation,* 447 F.2d 569 (7th Cir. 1971). On July 30, 1971, Kerr-McGee satisfied the judgments in full by paying to lessees $93,849 plus interest.

Subsequently, Santa Fe made demand upon lessees for one-fourth of the amount recovered by lessees from Kerr-McGee. When lessees refused, this action was brought with a resulting judgment being entered in favor of Santa Fe for the amount prayed for together with interest from November 5, 1968. The principal amount of the Santa Fe judgment is equal to one-fourth of the principal amount recovered by lessees from Kerr-McGee. This appeal followed.

Lessees make the following assertions on appeal:

(1) That the "market price" of helium-bearing gas was established at 64¢ per MCF rather than the price established after litigation, and that, if not, there is a factual dispute as to the "market price" which would preclude the granting of summary judgment.

(2) If the "market price" is the amount established by the lessee-Kerr-McGee litigation, lessees are entitled to offset their litigation expenses before remitting to Santa Fe.

(3) Interest on any Santa Fe judgment should run from the date they were paid by Kerr-McGee rather than the November 5, 1968 date set in their judgment against Kerr-McGee.

If we correctly understand lessees' first argument it is based on the assumption that the "market price" of helium-bearing gas was established at 64¢ per MCF because this is the price the only purchaser in the area was paying. Thus, this "market price" establishes their liability to Santa Fe. They then argue, again if our understanding is correct, that the price of $1.76 paid by the same purchasers to the State of Arizona and to themselves is an artificial price established by reason of litigation and is not indicative of the true "market price".

"Market price" for gas has received various definitions ranging from "the price that is actually paid by buyers for the same commodity in the same market" *Shamrock Oil & Gas Corporation v. Coffee*, 140 F.2d 409, 410 (5th Cir. 1944), to "the average price in the field at the well." *Arkansas Natural Gas Company v. Sartor*, 78 F.2d 924, 927 (5th Cir. 1935). Both of these definitions, in our opinion, merely means what is the going price a buyer is required to pay for the gas? "Price" in this sense, can only be established by actual transactions between competitive buyers and competitive sellers. Such is not the situation, at least in Arizona, when dealing with the sale of helium-bearing gas. Here, in reality, there is only one purchaser of the product—Kerr-McGee. As is pointed out in *Eastern Petroleum Co. v. Kerr-McGee Corporation, supra,* in which lessees were parties litigant, Kerr-McGee is the operator of approximately 90% of the helium gas produced in Arizona and purchases the remaining 10% from these lessees and another.[1] Neither party maintains there exists an open market in Arizona.

In this situation, we are of the opinion that because there is no open market as such for helium-bearing gas in Arizona, "market price" may be established by "market value", that is, sales in the area. Under the facts in this case, the result is the same. Lessees have been receiving from Kerr-McGee since November 5, 1968, 95% of $1.76 per MCF for their helium-bearing gas. If the price is to be established by actual sales transaction, this establishes "market price". Likewise, evidence of comparative sales shows that the only other seller of helium-bearing gas in Arizona is receiving $1.76 per MCF, thus establishing "market value."

1. The "another" referred to is actually Eastern Petroleum Corporation, one of the plaintiffs in the federal court litigation, along with lessees. Eastern Petroleum is also a lessee of Santa Fe and has paid to Santa Fe one-fourth of the amount collected from Kerr-McGee in that litigation. Eastern Petroleum's judgment was in the sum of $742,494.

The mere fact that the "market price" or "market value" of helium-bearing gas was established by litigation does not, in our opinion, detract from the fact that these prices or values are now the going rate in Arizona. In fact, at least initially, since there is only one buyer, litigation would seem to be the only manner in which an arm's length price could be ascertained. Again, *Eastern Petroleum Co. v. Kerr-McGee Corporation, supra*, correctly points out:

> "The judicial determination of market value in the Arizona litigation was necessary because Kerr-McGee, as an operator under Arizona leases, was not selling gas to a third party refiner under free market conditions or as the result of arm's length bargaining. Only on the assumption that an independent refiner would pay a price of $1.76 per Mcf could that amount be considered the 'market value' for purposes of computing the State's royalty. In essence, the judgment in that litigation was a determination that a different operator would have obtained a price of $1.76 from Kerr-McGee as an independent refiner." 447 F.2d at 572–73.

The appellant does not disagree that it is presently receiving 95% of $1.76 per MCF for its helium gas.

■ We therefore hold that as a matter of undisputed material fact, the "market price" of the helium-bearing gas in Arizona was that established by the State of Arizona-Kerr-McGee litigation and by lessees' judgment against Kerr-McGee. In accordance with the terms of lessees' leases, Santa Fe is entitled to one-fourth thereof as royalty.

■ Lessees next contend that Santa Fe should be required to pay its royalty share, 25%, of the costs and expenses of the federal litigation against Kerr-McGee. Lessees cite no pertinent authority for this proposition. We have likewise found none. Lessees' leases require them to pay 25% of the "market price" of the amount of gas sold. The leases do not, nor does the definition of market price adopted in this opinion, take into consideration that market price includes the cost of collection from the buyer. Lessees having no contractual right to such a set off, the court will not gratuitously give them such a right.

■ Finally, lessees argue that they should only be charged with interest from the date that they actually received payment from Kerr-McGee, rather than the date Kerr-McGee was actually required to pay them interest, November 5, 1968. Lessees successfully argued before the federal courts that Kerr-McGee withheld payment under their contracts and that they should be compensated for the use of their money from the date that they were entitled to receive it. We find lessees' argument in federal court persuasive here. The market price for helium-bearing gas in Arizona was established on November 5, 1968. Under the terms of Santa Fe's lease, lessees have withheld payment of that market price since that date and Santa Fe should be compensated for the use of money from the date they were first entitled to receive it.

For the foregoing reasons, the judgment of the trial court is affirmed.

HAIRE, C. J., Division 1, and EUBANK, J., concur.